

# U.S. MERIT SYSTEMS PROTECTION BOARD

### Office of the Clerk of the Board
1615 M Street, N.W.
Washington, D.C.  20419-0002

Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

2024-1817

## ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of Pamela Messal *v.* Department of Agriculture, MSPB Docket No. DE-0752-20-0137-C-1, and that the administrative record is under my official custody and control on this date

on file in this Board

| | |
|---|---|
| May 23, 2024 | /s/ for |
| Date | Gina K. Grippando |
| | Clerk of the Board |

## CERTIFICATE OF SERVICE

I hereby certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Petitioner</u>

Electronic Mail          Allen Arthur Shoikhetbrod, Esq.
(via <u>mspb@mspb.gov</u>)   <u>ashoikhetbrod@fedattorney.com</u>

<u>Respondent</u>

Electronic Mail          Martin F. Hockey, Jr., Acting Director
(via <u>mspb@mspb.gov</u>)   Commercial Litigation Branch
                         Civil Division Classification Unit
                         U.S. Department of Justice
                         c/o Thee Matthews
                         <u>thee.matthews@usdoj.gov</u>

_____          _____
   May 23, 2024                      /s/
      (Date)                  Dinh Chung
                             Case Management Specialist

# INDEX

Pamela Messal

V.

Department of Agriculture

MSPB Docket No. DE-0752-20-0137-I-1

I - Initial Appeal

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | IA | Appellant - Initial Appeal | 01/13/2020 |
| 2 | IA | MSPB - Acknowledgment Order | 01/16/2020 |
| 3 | IA | MSPB - Scheduling Order | 01/17/2020 |
| 4 | IA | MSPB - Affirmative Defenses Order | 01/17/2020 |
| 5 | IA | MSPB - Preliminary Status Order | 01/17/2020 |
| 6 | IA | MSPB - Hearing Order | 01/17/2020 |
| 7 | IA | Agency - Agency Representative Addition | 01/21/2020 |
| 8 | IA | Appellant - Appellant Updated Designation of | 01/23/2020 |
| 9 | IA | MSPB - Order Rescheduling | 01/27/2020 |
| 10 | IA | Agency - Agency File Part 1 | 01/31/2020 |
| 11 | IA | Agency - Agency File Part 4 | 01/31/2020 |
| 12 | IA | Agency - Agency File Part 5 | 01/31/2020 |
| 13 | IA | Agency - Notification of Hearing Facility | 01/31/2020 |
| 14 | IA | Appellant - Appellant's Affirmative Defense Brief | 01/31/2020 |
| 15 | IA | Appellant - Appellant's Affirmative Defense Brief | 01/31/2020 |
| 16 | IA | MSPB - Order Rejecting Improperly Filed | 01/31/2020 |
| 17 | IA | Agency - Agency File Part 2 | 02/01/2020 |
| 18 | IA | Agency - Agency File Part 3 | 02/01/2020 |
| 19 | IA | Agency - Agency Representative Addition | 02/02/2020 |
| 20 | IA | MSPB - Order and Summary of Status | 02/06/2020 |
| 21 | IA | Agency - Agency's Affirmative Defenses Reply | 02/10/2020 |
| 22 | IA | Agency - Agency Motion to Suspend Case | 03/12/2020 |
| 23 | IA | MSPB - Tab Intentionally Left Blank | 03/12/2020 |
| 24 | IA | MSPB - Order | 03/12/2020 |
| 25 | IA | MSPB - Order Regarding VTC Hearing | 03/25/2020 |
| 26 | IA | Appellant - Consent Motion to Reschedule | 03/25/2020 |
| 27 | IA | MSPB - Order Rescheduling Prehearing | 03/26/2020 |

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 28 | IA | Agency - Agency's Prehearing Submissions | 03/27/2020 |
| 29 | IA | MSPB - Order Rescheduling Hearing | 04/02/2020 |
| 30 | IA | MSPB - Order and Summary of Prehearing | 04/14/2020 |
| 31 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 32 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 33 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 34 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 35 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 36 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 37 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 38 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 39 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 40 | IA | Appellant - Appellant Prehearing Submissions | 04/30/2020 |
| 41 | IA | MSPB - Order Suspending Case Processing | 05/06/2020 |
| 42 | IA | MSPB - ZfG Hearing and Status Info | 05/12/2020 |
| 43 | IA | MSPB - Summary of Status Conference | 06/08/2020 |
| 44 | IA | MSPB - Order Regarding Hearing | 06/16/2020 |
| 45 | IA | MSPB - Order and Summary of Status | 06/17/2020 |
| 46 | IA | MSPB - Hearing Recording for June 23 2020 | 06/23/2020 |
| 47 | IA | MSPB - Hearing Attestation and Speaker Index | 06/23/2020 |
| 48 | IA | MSPB - Judge's Exhibit 1 | 06/23/2020 |
| 49 | IA | Other - Judge's Exhibit 2 | 06/23/2020 |
| 50 | IA | MSPB - Judge's Exhibit 3 | 06/24/2020 |
| 51 | IA | MSPB - Hearing Recording for June 24 2020 | 06/24/2020 |
| 52 | IA | MSPB - Hearing Attestation and Speaker Index | 06/24/2020 |
| 53 | IA | MSPB - Order Reconvening Hearing | 06/29/2020 |
| 54 | IA | MSPB - Order Regarding Hearing | 07/20/2020 |
| 55 | IA | MSPB - Judge's Exhibit 4 | 07/27/2020 |
| 56 | IA | MSPB - Hearing Recording for July 27 2020 | 07/27/2020 |
| 57 | IA | MSPB - Hearing Attestation and Speaker Index | 07/27/2020 |
| 58 | IA | MSPB - Order Reconvening Hearing and Closing | 08/04/2020 |
| 59 | IA | MSPB - Hearing Recording for August 7 2020 | 08/07/2020 |
| 60 | IA | MSPB - Hearing Attestation and Speaker Index | 08/07/2020 |
| 61 | IA | Appellant - Appellant's Motion for Sanctions and | 08/14/2020 |

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|-----|-------------|------------------------|----------------------------|
| 62 | IA | Agency - Agency Response to Appellant's | 08/20/2020 |
| 63 | IA | Agency - Agency's Closing Arguments | 08/31/2020 |
| 64 | IA | Appellant - Appellant's Closing Arguments | 08/31/2020 |
| 65 | IA | MSPB - Order on Admitted Exhibits | 09/28/2020 |
| 66 | IA | MSPB - Order Suspending Case Processing | 09/29/2020 |
| 67 | IA | Agency - Agency Notice of Pending Settlement | 03/07/2022 |
| 68 | IA | MSPB - Ruling on Motion for Sanctions and | 03/07/2022 |
| 69 | IA | MSPB - Notice | 03/07/2022 |
| 70 | IA | MSPB - Initial Decision | 03/07/2022 |
| 71 | IA | MSPB - Certificate of Service | 03/07/2022 |
|    | IA | MSPB - Hearing Transcript for July 27, 2020 | 07/27/2020 |
|    | IA | MSPB - Hearing Transcript for June 24, 2020 | 06/24/2020 |
|    | IA | MSPB - Hearing Transcript for June 23, 2020 | 06/23/2020 |

INDEX

Pamela Messal

V.

Department of Agriculture

MSPB Docket No. DE-0752-20-0137-I-1

I - Initial Appeal

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|-----|-------------|-------------------------|------------------------------|
| 1 | PFR | Appellant - Petition for Review | 04/11/2022 |
| 2 | PFR | MSPB - Petition For Review Acknowledgment | 04/12/2022 |
| 3 | PFR | Agency - Agency Representative Addition | 04/13/2022 |
| 4 | PFR | Agency - Response to Appellant's Petition for | 05/06/2022 |
| 5 | PFR | MSPB - Final Order | 03/19/2024 |

INDEX

Pamela Messal

V.

Department of Agriculture

MSPB Docket No. DE-0752-20-0137-C-1

C - Petition for Enforcement

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | IA | Appellant - Petition for Enforcement | 04/11/2022 |
| 2 | IA | MSPB - Acknowledgment Order | 04/15/2022 |
| 3 | IA | MSPB - Order | 04/18/2022 |
| 4 | IA | Agency - Agency Response Regarding | 04/28/2022 |
| 5 | IA | Appellant - Appellant Response to Jurisdiction | 04/28/2022 |
| 6 | IA | MSPB - Order Rejecting Pleading | 04/29/2022 |
| 7 | IA | Agency - Agency Reply to Appellant's | 05/06/2022 |
| 8 | IA | MSPB - Initial Decision | 06/02/2022 |
| 9 | IA | MSPB - Certificate of Service | 06/02/2022 |

INDEX

Pamela Messal

V.

Department of Agriculture

MSPB Docket No. DE-0752-20-0137-C-1

C - Petition for Enforcement

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|-----|-------------|-------------------------|------------------------------|
| 1 | PFR | Appellant - Petition for Review | 07/07/2022 |
| 2 | PFR | MSPB - Petition For Review Acknowledgment | 07/11/2022 |
| 3 | PFR | Agency - Response to Appellants Petition for | 07/29/2022 |
| 4 | PFR | MSPB - Final Order | 03/20/2024 |

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### DENVER FIELD OFFICE

PAMELA MESSAL,
          Appellant,

v.

DEPARTMENT OF AGRICULTURE,
          Agency.

DOCKET NUMBER
DE-0752-20-0137-I-1

DATE: March 7, 2022

Ryan C. Nerney, Esquire, San Diego, California, for the appellant.

Stephanie Rapp-Tully, Esquire, Washington, D.C., for the appellant.

Jerry Garcia, Esquire, Albuquerque, New Mexico, for the agency.

Rayann Brunner, Esquire, Albuquerque, New Mexico, for the agency.

### BEFORE
Patricia M. Miller
Administrative Judge

## INITIAL DECISION

### INTRODUCTION

On January 13, 2020, Pamela Messal (appellant), a non-preference eligible, timely filed an appeal with the Merit Systems Protection Board (Board) challenging the Department of Agriculture's (agency) action removing her for misconduct from her permanent competitive service appointment to the position of Supervisory Forestry Technician, WG-0462-09. Initial Appeal File (IAF), Tab 1 and Tab 10, p. 19. The Board has jurisdiction over the appellant's appeal. *See* 5 U.S.C. §§ 7511(a)(1)(A), 7512(1), 7513(d) and 7701(a) (the Board has

jurisdiction over appeals from removal actions which involve non-probationary employees in the competitive service).

For the reasons discussed below, the agency's charges are sustained and the removal action is AFFIRMED.

## ANALYSIS AND FINDINGS

<u>Initial findings</u>

The following material facts are undisputed unless otherwise noted. The appellant was employed as a Supervisory Forestry Technician, Humboldt-Toiyabe National Forest, Intermountain Region, U.S. Forest Service and duty stationed at Carson City, Nevada. IAF, Tab 10, p. 19. The appellant's duties involved supervising an interagency hotshot crew of approximately twenty wildland firefighters. IAF, Tab 11, pp. 22-32. The appellant's position was a primary/rigorous firefighter position under the provisions of 5 U.S.C. § 8336(c) (CSRS) and § 8412(d) (FERS). Incumbents of such position are subject to medical qualifications and must meet and maintain meeting the firefighter arduous duty medical standards. IAF, Tab 11, p. 24 and Tab 15, pp. 75-77. At the time of her removal, the appellant had twenty-three years of service and had no record of prior discipline. IAF, Tab 11, p. 15 and Tab 17, p. 8.

On November 13, 2019, Derek Ibarguen, Deputy Forest Supervisor, Bridger-Teton National Forest, issued to the appellant a thirty-day advance notice of proposed removal based on the following charges: (A) absence without leave absence without leave (AWOL) for 93.5 hours involving twelve specifications, (B) conduct unbecoming a supervisor involving three specifications, (C) failure to follow supervisory instructions involving thirteen specifications, (D) failure to follow leave requesting procedures involving two specifications, and (E) failure to follow agency policy involving two specifications. IAF, Tab 11, pp. 4-17. The appellant was provided the opportunity to submit a written and/or oral reply within seven days from receipt of the notice. *Id.*

The appellant submitted a November 21, 2019 written response (IAF, Tabs 17 and 18) and provided a November 25, 2019 oral response.  IAF, Tab 10, pp. 30-45.  On December 5, 2019, David Rosenkrance, Deputy Regional Forester, issued a decision letter affirming the charges and the penalty of removal, effecting the appellant's removal on December 14, 2019. IAF, Tab 10, pp. 20-28. This appeal followed. IAF, Tab 1.

I convened a prehearing conference on April 1, 2020, during which I accepted for adjudication whether the agency has proven the charges, nexus to the efficiency of the service, and the penalty imposed.  IAF, Tab 30.  I also accepted for adjudication the appellant's affirmative defenses of (1) harmful procedural error and procedural due process errors, (3) discrimination based on sex, (4) discrimination based upon disability (accommodation and disparate treatment), (5) retaliation (Equal Employment Opportunity (EEO) and Occupational Safety and Health Administration (OSHA) activity), and (6) retaliation based on protected whistleblowing activities.  IAF, Tab 30.  A Board hearing was held June 23, 24 and 27, 2020 and August 7, 2020.  IAF, Tabs 46, 51, 56, and 59.  The record closed on August 31, 2020 with the submission of closing statements. IAF, Tabs 63 and 64.

I have made my decision after considering all of the extensive evidence and argument in the record.

Applicable Law

"When an agency takes adverse action against an employee, the agency must establish by a preponderance of the evidence that (1) the charged conduct occurred; (2) there is a nexus between the conduct and efficiency of service; and (3) the imposed penalty was reasonable." *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1010 (Fed. Cir. 2019); 5 U.S.C. §§ 7701(c)(1)(B), 7513(a); 5 C.F.R. § 1201.56(b)(1)(ii).  Preponderant evidence is "that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely true than

untrue." 5 C.F.R. § 1201.4(q). If an agency proves its charges, it must show that discipline in some form is warranted to promote the efficiency of the service and that the penalty imposed (here, the removal action) is within the tolerable limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). The nexus requirement, for purposes of whether an agency has shown that its action promotes the efficiency of the service, means there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate governmental interest. *Merritt v. Department of Justice*, 6 M.S.P.R. 585, 596 (1981), modified, *Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n.2 (1987).

To sustain Charge A, AWOL, the agency must show that the employee was absent and that her absence was unauthorized, or that her request for leave was properly denied. *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 6 (2009). An agency also bears the burden of proving that, in taking a leave-related disciplinary action, it properly denied an eligible employee leave under the Family and Medical Leave Act of 1993 (FMLA), 5 U.S.C.A. § 6381. *Burge v. Department of the Air Force*, 82 M.S.P.R. 75, 84, ¶ 13 (1999).

To prove Charge B, conduct unbecoming a federal supervisor, the agency must establish by preponderant evidence that (1) the employee engaged in the specified conduct; and (2) the conduct was improper, unsuitable, or detracted from the appellant's character or reputation. *See Miles v. Department of the Army*, 55 M.S.P.R. 633, 637 (1992). A charge of unacceptable or inappropriate behavior by a supervisor does not normally require proof of intent, nor is the agency required, in proving the charge, to show that the conduct has actually embarrassed the agency. *See Crouse v. Department of the Treasury*, 75 M.S.P.R. 57, 63 (1992); *Goldstein v. Department of the Treasury*, 62 M.S.P.R. 622 (1994).

To prove Charge C, failure to follow supervisory instructions or directives, the agency must show: (1) an understandable directive was in effect; and (2) the

appellant failed to follow the directive, without regard to whether the failure was intentional. *See Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 555-57 (1996) (unlike a charge of insubordination, a charge of failure to follow instructions does not require proof that the failure was intentional, although intent is a factor in assessing the appropriate penalty). An employee first must comply with an order and then, if she disagrees with the order, register her complaint or grievance later, except in certain limited circumstances, such as when obedience would cause her irreparable harm. *Larson v. Department of the Army*, 91 M.S.P.R. 511, ¶ 21 (2002).

To prove Charge D, failure to follow leave procedures, the agency must establish (1) the appellant sought to take leave or claimed leave, and (2) she failed to follow leave procedures.

Finally, to prove Charge E, failure to follow policy or procedure, an agency must present preponderant evidence that a proper policy or procedure existed and that the employee failed to follow it, without regard to whether the failure was intentional or unintentional. *Cf. Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 555-57 (1996) (finding that an agency may establish a charge of failure to follow supervisory instructions by showing that proper instructions were given to an employee and that he failed to follow them, notwithstanding whether the failure was intentional or unintentional).

In this decision, to resolve issues of credibility and the weight to be given testimonial and other documentary evidence, I have been guided by *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) and *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-87 (1981). According to *Hillen*, when resolving issues of credibility, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character;

(3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Id*.

In evaluating documentary evidence, under *Borninkhof* the following factors affect the weight to be accorded such evidence: (1) the availability of persons with first-hand knowledge to testify at the hearing; (2) whether the statements of the out-of-court declarants were signed or in affidavit form, and whether anyone witnessed the signing; (3) the agency's explanation for failing to obtain signed or sworn statements; (4) whether the declarants were disinterested witnesses to the events, and whether the statements were routinely made; (5) the consistency of the declarants' accounts with other information in the case, internal consistency, and their consistency with each other; (6) whether corroboration for statements can otherwise be found in the agency record; (7) the absence of contradictory evidence; and (8) the credibility of the declarant when he or she made the statement attributed to him or her.

When evaluating the evidence in this appeal, applying *Hillen*, I found the appellant not credible as a witness. During the hearing, the appellant's responses were inconsistent with the documentary evidence in the record and she was extremely evasive when answering questions. At one point when the agency was questioning the appellant, to avoid answering the appellant pretended she was unable to read the exhibits over the Zoom for Government teleconferencing protocol even though she had no problem reading exhibits while being questioned by her own counsel. The appellant only ceased her charade when I directed her to use the back-up electronic PDF copy of the exhibits she possessed. HT 07/27/2020, pp. 265-271. Based on the appellant's overall demeanor at the hearing and the extensive written documentation in the record, the appellant regularly seeks to manipulate information to create an inaccurate narrative and I find her not credible.

<u>The agency has proven Charge A, Absence Without Leave, Charge D, Failure to Follow Leave Procedures, and Charge C, Specification 11, Failure to Follow Supervisory Instructions.</u>

In Charge A, Specifications 1-10, the agency asserted the appellant was AWOL 78.5 hours between March 4-15, 2019 (IAF, Tab 11, pp. 4-5) and in Specifications 11-12 asserted the appellant was AWOL 15 hours from October 23-24, 2019.  IAF, Tab 11, p. 5.  Charge C (Specification 11) and Charge D involved events between October 22-24, 2019 and are described further below.

To provide context for these 2019 charges, a year earlier, on March 13, 2018, the appellant emailed Nina Rasure, her 4th level supervisor, asserting that she was being subjected to a hostile work environment (non-sexual) by her supervisor, Michael Wilde.  IAF, Tab 15, p. 12.  On March 25, 2018, Rasure sent an email to the appellant confirming a conversation they had where among other matters Rasure advised the appellant of her ability to report the situation to the "Harassment Reporting Center."  *Id*., p. 14.  Rasure then elected to file a report on the appellant's behalf.  *Id*.  On March 26, 2018, the agency acknowledged receipt of a report identifying the appellant "as an individual who may be experiencing some form of harassment."  *Id*., p. 15.

Subsequently, on May 8, 2018, the appellant was assigned a new supervisor, Jeremy Kiesling, Deputy Fire Chief, Humboldt-Toiyabe National Forest.  IAF, Tab 38, p. 10.

On June 27, 2018, due to a harassment complaint being filed against the appellant involving one of her subordinate employees, the appellant was detailed out of her supervisory position to a position in the regional office while the investigation was pending.  IAF, Tab 15, p. 17.  Initially, Regional Fire Director Sue Stewart was her supervisor.  *Id*., p. 19.

At the hearing, Matthew Gill, one of the appellant's subordinate employees, testified that he filed the complaint against the appellant alleging that

she was harassing and bullying Isaac Walden, an employee supervised by the appellant and one of Gill's co-workers.  HT 6/23/20, p 191.[1]

Effective September 30, 2018, William Dunkelberger, Forrest Supervisor, Humboldt-Toiyabe National Forest, assigned the appellant to fire prevention work.  Dunkelberger explained:

> Until the Anti-Harassment cases have been concluded I am temporarily assigning you to the HTNF SO effective September 30, 2018, to perform work in connection with the fire prevention program. Since your duty station is Carson City you may use a government vehicle and official time to travel back and forth between Carson City and Sparks. Please report to the SO Monday, October 1 at 0900 to Jeremy Kiesling, who will serve as your supervisor.

IAF, Tab 15, p. 22.

The appellant then requested the agency place her on administrative leave while her harassment complaint involving Wilde was investigated due do to her "safety and health."  On October 24, 2018, Rasure denied the request.  *See generally*, IAF, Tab 14, pp. 60-64.  Subsequently, between October 2018 and July 2019, the appellant was absent from the workplace using a variety of leave, including leave without pay, annual leave, sick leave, advanced sick leave, and FMLA.  IAF, Tab 10, p. 24.  The appellant contended her extended absence were due to ongoing and pervasive workplace discrimination, reprisal, and harassment by all of her supervisors.  *See generally*, IAF, Tab 17, pp. 5-15.

*March 4-15, 2019*

On February 18, 2019, the appellant signed a Standard Form (SF)-71 "Request for Leave or Approved Absence" for the use of 80 hours of accrued annual leave covering March 4, 2019 to March 16, 2019.  *Id*., p. 36.  On February 25, 2019, Kiesling disapproved the request, noting that "The employee has been

---

[1] At some point, precisely when is not clear in the record, the appellant started asserting that she had been sexually harassed by Wilde and that also Walden sexually harassed her.

in continuous leave status since October 1, 2018. There is work for the employee to accomplish at the office." *Id*.

On March 4, 2019, the appellant signed another SF-71 "Request for Leave or Approved Absence" for March 4, 2019 to March 26, 2019. IAF, Tab 11, p. 42. This time the appellant sought to use 130 hours of either accrued or advanced sick leave. The appellant marked the box "illness/injury/incapacitation of requesting employee" and "other". *Id*. In the remarks section, the appellant stated "Personal Reasons. Request related to workplace sexual harassment & continue harassment & relation [sic] relating to such." *Id*. The appellant included with the March 4 leave request a copy of a March 4, 2019 note from Natalie R. Nedeaua, A.P.R.N. (Advanced Practice Registered Nurse), Renown Medical Group-Richards Carson City, which merely stated "Pamela Messal was seen in my clinic on 3/4/2019. Please excuse her absence from work due to illness from 3/4/2019-3/25/2019. She may return to work on 3/26/19." IAF, Tab 11, p. 43.

Kiesling received the appellant's request on March 5, 2019. IAF, Tab 11, p. 46. In a March 7, 2019 memorandum, Kiesling advised the appellant that:

> As of the end of pay period 3 your sick leave balance was 4 hours. During pay period 4, you called in sick which leaves your current sick leave balance at 0. Therefore, your request for accrued sick leave is denied. Your request for advanced sick leave was provided to Bill Dunkelberger, Forest Supervisor, as I do not have the authority to grant advanced sick leave. He has reviewed your request and has denied it. . . In addition, the medical documentation is not administratively acceptable as it only provides you are ill and does not indicate a prognosis or that you are actually incapacitated to perform your duties. You have been continuously absent since October 2018. The only exception being the training you attended last week in Boise, ID. You have requested annual leave during this same time period that you are now requesting sick leave. On February 22, 2019, you requested 80 hours of annual leave beginning on March 4 through March 16, 2019. This request was denied as there is work to be accomplished. After my denial, you submitted the same request again on February 25, 2019 and cited personal reasons due to alleged workplace harassment. Your request was again denied.

I am directing you to return to work. Failure to do so will result in absence without leave (AWOL).

IAF, Tab 11, p. 46.

The agency's advanced sick leave policy provided as follows:

32.15 – Advanced Sick Leave

1. Advance sick leave may be granted to an employee who has exhausted all of their sick leave. Advanced sick leave is not an entitlement but may be granted at the approving official's discretion. (See FSM 6100 for delegation of authority for the approval of advanced sick leave). Approving officials shall use their judgment to review a request for advanced sick leave and may deny the request if not supported by administratively acceptable evidence. Upon an employee's request, an employee must be granted advanced sick leave to the maximum extent practicable, in accordance with sick leave laws and regulations and consistent with mission needs.

2. A full-time employee may be advanced up to 240 hours (30 days) of sick leave:

   a. If incapacitated for the performance of their duties by physical or mental illness, injury, pregnancy, or childbirth. . .

IAF, Tab 34, pp 50-51.

Dunkelberger confirmed at the hearing that he denied the appellant's March 4, 2019 request for advanced leave because the documentation provided "was not administratively acceptable I think it was very vague. It didn't indicate a prognosis -- incapacitation, whether she was capable of doing part of her duties or none of them.  HT 7/27/20, pp. 60-62.

In a March 11, 2019 email to Kiesling, the appellant repeated her refusal to report to work, asserted she was ill, and that Kiesling's actions constituted harassment and retaliation, and that she was looking into FMLA leave.  IAF, Tab 11, pp. 48; 51.  The appellant submitted another letter from Nedeau dated March 12, 2019, which stated "I am Ms. Pamela Messal's primary care provider. Please excuse her absence from work until further notice. She has been sent to specialist for further evaluation and management of her current health concerns."  IAF, Tab 18, p. 11.  Nadeau signed the same letter on March 18, 2019.  IAF, Tab 18, p. 10.

The appellant also submitted a March 18, 2019 letter from Dr. Lindsey E. Cassidy, UC Health Family Medicine Clinic – Westminster, which stated "Ms. Pamela Messal was seen in a clinic and unable to work until further notice." IAF, Tab 18, p. 10.

The appellant then filed a complaint alleging Kiesling was harassing her. Accordingly, effective March 27, 2019 until May 24, 2019, Jamie Tripp, Acting Forest Fire Management Officer, Humboldt-Toiyabe National Forest, was detailed and assigned to be the appellant's supervisor while a review and investigation into appellant's complaint against Kiesling was ongoing. IAF, Tab 11, p. 53 and HT 6/24/19, p. 22.

Since there was no record of the appellant applying for FMLA, on March 29, 2019 at 2:35 p.m., Tripp emailed the appellant advising her that she was in an AWOL status, providing the appellant with a link to the Office of Personnel Management's website regarding entitlement to FMLA. Tripp also attached to the email a form WH380-E, "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act). IAF, Tab 11, pp. 57; 60.

The appellant responded to Tripp's email on March 29, 2019, at 3:27 p.m., reiterating her claims of harassment, discrimination, and retaliation and objecting to her time being coded as AWOL during Pay Period 5. IAF, Tab 11, p. 58. The appellant asserted she had previously submitted FMLA leave requests (IAF, Tab 11, p. 58). Upon review, however, I find the record is devoid of any credible evidence of any FMLA requests from the appellant addressing the March 4, 2019, to March 16, 2019 time period.

On March 31, 2019, the appellant sent another email to Tripp objecting to her time for Pay Period 5 being coded AWOL and asserting again her claims of harassment, discrimination, and retaliation. The appellant claimed she was in the process of applying for FMLA. IAF, Tab 11, pp. 66-67.

In an April 5, 2019 email, Tripp conditionally approved FMLA leave for the appellant beginning on April 1, 2019 based upon the appellant having a FMLA application in process.  Tripp directed the appellant to submit a FMLA form and supporting documentation no later than April 30, 2019, advising:

> Based on your leave request, I will approve 80 hours of annual for 04/01/19 to 04/12/19. I will also approve 120 hours of advanced sick leave 04/15/19 to 05/03/19. Failure to provide your supporting medical documentation by 04/30/19, may result in withdrawal of my conditional approval and your time coded as absence without approved leave (AWOL).

IAF, Tab 11, p. 65.   On April 12, 2019, Tripp reiterated to the appellant the additional information needed to support her FMLA request.  IAF, Tab 14, p. 67. Subsequently, on April 29, 2019, the appellant submitted a form WH380-E for FMLA leave signed by her medical provider, Dr. Cassidy, on April 29.  IAF, Tab 14, pp. 37-40.  Dr. Cassidy noted the appellant was first seen on March 18, 2019, and that she was incapacitated from working from May 5, 2019, to June 16, 2019. *Id*.  Dr. Cassidy diagnosed:

> Acute stress disorder and reactive depression related to workplace + environmental/situational stressors.  Patient being seen regularly for ongoing treatment/therapy, but still with significant symptoms. Reduction in stressors would likely help to improve symptoms.

IAF, Tab 14, p. 39.

Based upon the appellant's April 29 FMLA application, on May 2, 2019, Tripp approved the appellant for FMLA leave from March 18, 2019, through June 16, 2019.  IAF, Tab 11, pp. 119-20.  However, the agency continued to charge the appellant with AWOL for March 4-15, 2019 (Pay Period 5) since her FMLA request did not cover this time period, her sick leave balance at the time was zero, and she never submitted administratively acceptable documentation to support approval of advanced sick leave.

In her November 20, 2019 response to the notice of proposed removal, the appellant contended she provided sufficient medical documentation and should not have been charged AWOL for March 4-15, 2019.  IAF, Tab 17, p. 5.

However, I find the record is devoid of any credible evidence that the appellant submitted to the agency administratively sufficient documentation to support her request for advance sick leave for the March 4-15, 2019 time period and the record is devoid of any credible evidence that at any point she requested FMLA leave for those dates. The only documentation she submitted was the Nadeau note described above; Dr. Cassidy's medical documentation did not cover the March 4-15 time period. I find Nadeau's note was extremely vague, lacked any diagnosis, prognosis, or description as to why the appellant was incapacitated from performing any of her duties. I therefore find the agency has proven it properly denied the appellant's request for advanced sick leave for the March 4-15, 2019 time period. In turn, the agency has proven that the appellant was absent from the workplace on March 4-15, 2019, her absence was unauthorized, and the agency properly designated the appellant as AWOL. Therefore, the agency has proven specifications 1-10 by preponderant evidence.

*October 23-24, 2019*

With the end of Tripp's detail on May 24, 2019, Teresa McClung became the appellant's supervisor until her December 14, 2019 removal. IAF, Tab 12, p. 86.

As noted above, Charge A, Specifications 11-12 involved the appellant's asserted AWOL October 23-24, 2019. IAF, Tab 11, p. 5. In Charge D, the agency also charged the appellant with two specifications of failing to follow leave requesting procedures on October 23-24, 2019. IAF, Tab 11, p. 7. The Board will merge charges if a charge is based on the same conduct and proof of one charge automatically constitutes proof of the other charge. *See Shiflett v. Department of Justice*, 98 M.S.P.R. 289, 292 (2005). In the instant case these specifications are identical in each charge. To prove the charge of AWOL, the agency must show the appellant was absent on the dates in question and that her absence was unauthorized or that her request for leave was properly denied. *See Wesley v. U.S. Postal Service*, 94 M.S.P.R. 277, 283 (2003). Thus, the two

charges are merged because I find the charges are based on the same conduct and proof of one charge automatically constitutes proof of the other.

Finally, under Charge C, specification 11, the agency charged the appellant with failure to follow supervisory instructions, asserting that on October 22, 2019 she had been instructed to attend a meeting at 10:30 a.m. on October 23, 2019, to review work projects and the appellant failed to appear for the meeting. IAF, Tab 11, p. 6.

As detailed further below relating to Charge C, McClung had ongoing issues with the appellant not following her directions regarding how to code her timesheet for certain leave and ongoing concerns with the appellant not contacting McClung for leave when the appellant was going to be absent from work. IAF, Tab 12, p. 193. On October 9, 2019, Teresa McClung and Donald Harris, Forest Service LE&I Patrol Captain met with the appellant and issued to her a Notice of Proposed Suspension for 14-days, charging her with 78.5 hours of AWOL, Conduct Unbecoming a Federal Supervisor, and Failure to Follow Supervisory Instruction. Derek Ibarguen participated in the meeting telephonically.[2] IAF, Tab 12, pp. 231-240.

On October 21, 2019, McClung sent an email to the appellant and two other staff members entitled "Process for requesting leave or situational telework." IAF, Tab 12, p. 199. McClung directed:

Folks-

I want to take this opportunity to clarify for you my direction regarding your requests for leave or situational telework.

Annual Leave – Requests should be submitted to me on OPM Form 71 at least two days in advance, and earlier if possible.

Situational Telework – Requests should be submitted to me via email at least one day in advance. If telework is due to inclement weather or office closure you should notify me via email or text message as soon as possible.

---

[2] This meeting led to Charge E discussed further below. The notice of proposed suspension was later rescinded, and the November 13, 2019 notice of proposed removal was issued instead. IAF, Tab 10, p. 29.

> Sick Leave – Please notify me of your absence due to illness via email or text message at least one hour in advance of the expected start of your work day, or earlier if possible. If you have no sick leave available to use, the direction for annual leave or situational telework applies.

> Let me know if you have any questions or concerns. Thanks.

*Id*.

Subsequently, on October 22, 2019 at 7:39 a.m., the appellant emailed McClung requesting telework for the 23rd and 24th because her computer was being fixed and she needed to work on responses to an EEO investigation. IAF, Tab 12, p. 206. On October 22, 2019 at 11:31 a.m., McClung responded to the appellant, requesting additional information regarding the request for official time for an EEO investigation. McClung also advised the appellant that she wanted to meet with her on October 22 at 2 p.m. to review work projects and her computer issues. HT 6/24/21, p. 169 and IAF, Tab 12, p. 205. The appellant responded at 12:20 refusing to attend any meeting with McClung unless she had an "advocate" present. The appellant wrote:

> Due to your consistent threatening behavior towards me, abusive behavior, and deceitfulness, including in our last meeting in blind sighting me with a proposed suspension under the pretense of a meeting for work updates, I will meet with you when I have an advocate with me (that I feel safe with) and outside the forest service law enforcement only.

> After the last meeting on October 9, 2019, in which you blind sighted me with punishment based on lies, I was a patient in the Emergency Room the next day due to your abuse towards me.

> When you asked me why I was in the ER, I sent you this message:

> "Resulting physical effects on my body from multiple false accusations and continuing abuse of my character."

> Teresa, this is another official request from me to you to stop abusing me, bullying me, lying to me, cornering me, harassing me, slandering me, and to stop all of this behavior immediately. The aggression you have displayed to me on multiple occasions has made for an unsafe work environment for me. I do not feel safe here in the SO and I do not feel safe around you at all.

IAF, Tab 12, pp. 204-205.   In a subsequent email, the appellant informed McClung the meeting on October 22 at 2 p.m. did not work for her.  *Id*., p. 208. At 2:54 p.m. on October 22, McClung responded to the appellant "OK.  Then we will meet 10:30-11:30 tomorrow [October 23] in the upstairs conference room." *Id*., p., 208.

Despite the appellant saying she could not meet with McClung the afternoon of October 22, Denice Rice, a friend and co-worker of the appellant's from California called McClung on October 22 at 2 p.m. stating she was coming as the appellant's "representative" to meet with her and the appellant that afternoon.  IAF, Tab 12, pp. 211-212.  At 3:00 p.m., the appellant and Rice showed up at McClung's office informing McClung's executive assistant that they wanted to see her.  McClung met with Rice and the appellant in a conference room.  McClung told Rice she had no authority to be present at the meeting and that she would meet with the appellant on October 23 at 10:30 a.m. as previously arranged.  IAF, Tab 12, pp. 210-211.  It is undisputed by the parties that this impromptu meeting was tense.  *See generally*, IAF, Tab 12, pp. 210-211; Tab 15, pp. 119-129.

On October 23, 2019, at 6:35 a.m., the appellant sent McClung an email again requesting telework for the 23rd and 24th because her computer was being fixed and she needed to work on responses to an EEO investigation.  IAF, Tab 12, p. 213.  At 8:41 a.m., McClung reminded the appellant they had a meeting scheduled and she expected the appellant to be at the office.  *Id*.  In an 8:45 a.m. response, the appellant asserted the meeting had been cancelled.  *Id*., p. 218. When McClung advised the appellant that she had not agreed to cancel it, the appellant sent an email at 8:48 a.m. to McClung claiming McClung was harassing her and the appellant did not feel safe.  *Id*., p. 215.

The appellant never appeared for the October 23 meeting or requested leave.  Instead at 10:18 a.m. she sent an email to McClung asserting "I am going to report your abuse to authorities and find help from your abuse, aggressive

behavior, and threats. Your abuse is illegal, unethical, and violates all of my civil rights." IAF, Tab 12, p. 223. At 1:07 p.m. the appellant sent another email to McClung "I am feeling very ill and am taking myself to the Doctor. I request that you refrain from contacting me due to your actions causing harm and unwillingness to stop your threats, acts of aggression and the horrific acts that you have done to me. Your abuse to me and my support need to stop, it is making me sick." IAF, Tab 12, p. 223.

On the afternoon of October 23, 2019, the appellant sought medical treatment at the Carson Tahoe Regional Medical Center. IAF, Tab 37, pp. 12-13. That same date, she was given a note by a provider at the medical center indicating she should be excused from work through October 25, 2019. *Id*. The note, however, provides no additional information regarding a diagnosis, prognosis, or any indication as to why the appellant was incapacitated from working. *Id*.

McClung first saw the October 23 note on November 6, 2019 when the human resources office showed it to her. HT 6/24/21, pp. 110-11. However, the appellant, who had a sick leave balance of zero, still had not requested any leave from McClung or identified what type of leave she was requesting. *Id*.

On October 24, 2019, at 9:20 a.m. the appellant emailed McClung and again advised her that she was too ill to report to work. IAF, Tab 12, p. 244. The appellant neither showed up for work nor requested leave.

The appellant maintains she suffered a medical emergency, followed applicable leave procedures, and should have not been charged AWOL. IAF, Tab 17, pp. 5, 7-8.

If an employee has sufficient sick leave to cover a period of time in which she is incapacitated for duty, the agency must grant the leave requested when the employee has provided administratively acceptable evidence of incapacitation because of illness or injury, regardless of whether the employee has complied with applicable leave procedures. *See* 5 C.F.R. § 630.401; *Campana v.*

*Department of the Navy*, 873 F.2d 289, 291 (Fed. Cir. 1989); *Foreman v. U.S. Postal Service*, 89 M.S.P.R. 328 ¶ 8 (2001); *Young v. U.S. Postal Service*, 79 M.S.P.R. 25, 32 (1998). However, I find, and it is undisputed, the appellant did not have sufficient sick leave to cover her absences and she never identified that type of leave she was requesting.

A charge of AWOL cannot be sustained if the appellant presents evidence that she was incapacitated for duty during the relevant time period. *See, e.g., Bishopp v. Department of the Air Force*, 75 M.S.P.R. 33, 39 (1997). Evidence of incapacitation that was not previously provided to the agency may be presented for the first time to the Board to prove that the appellant was incapacitated for duty during the relevant time period. *Id*.

I find the record is devoid of credible evidence that the appellant was incapacitated the morning of October 23 when she was expected to report to work and meet with McClung. I also find given the vague nature of the medical documentation which lacks any diagnosis or prognosis, the appellant has failed to prove that she was in fact incapacitated the afternoon of October 23 and all day October 24. Therefore, I find the agency has proven that the appellant was absent from the workplace October 23-24, 2019, her absences were unauthorized, and the record is devoid of any credible evidence that she requested leave. The agency has proven Charge A, Specifications 11-12 by preponderant evidence. I also find the appellant failed to follow McClung's supervisory directive to attend a meeting with her the morning of October 23. The appellant's seeking of medical treatment did not occur until the afternoon of October 23. Finally, I find the record is devoid of any credible evidence that following McClung's directive would in any way cause the appellant irreparable harm. Accordingly, the agency has proven specification 11 under Charge C by preponderant evidence.

In summary, I find the agency has proven the above specifications and the charges are SUSTAINED.

The agency has proven Charge B, Conduct Unbecoming a Federal Supervisor

The agency charged the appellant with conduct unbecoming a supervisor supported by three specifications. IAF, Tab 11, p. 5.   Specification 1 involved an incident which occurred on April 2, 2018.  IAF, Tab 11, p. 5.  The agency charged:

> On April 2, 2018, when returning to duty for the season, Isaac Walden noted that one of his two computer monitors was missing from his office. It was later located in your office, however, it was not connected or being used. In a statement by Matthew Gill, you were witnessed to have stated that you needed the monitor. You did not have a legitimate business need for removing or having Mr. Walden's second monitor removed from his office, or denying him the use of a second monitor that he had been using the previous season.

*Id*.

The events underlying specification 1 are undisputed. Gill's in-laws owned a small business and when they would recycle their computers, they would give them to Gill who would bring them to the office for staff to use.  Gill indicated at least half of the computer screens in the office were his.  HT 6/23/20, p. 194.  I find, and preponderant evidence in the record establishes, that the computer monitors remained Gill's personal property during the time period at issue in this appeal and were not purchased from him by the agency or otherwise converted to Federal government property.   In undisputed testimony, Gill credibly testified that the computer monitor at issue in this specification was one of the monitors he provided.  *Id*., pp. 194-95.

Walden had two computer monitors on his desk that allowed him to conduct his work using dual screens; one of the monitors was Gill's.  HT 6/23/20, pp. 139-141; 194.   On April 2, 2018, when Walden returned to the office after an absence, he noticed one of the monitors was missing from his office.  HT 6/23/20, pp. 139-141.   In the normal course of his duties, Gill went to the appellant's office; he saw the missing monitor that he had provided Walden on the appellant's desk.  HT 6/23/20, p. 194.    The monitor was not connected or

plugged in, with its cords wrapped around its base. HT 6/23/20, p. 195. When Gill asked the appellant why she had Walden's computer monitor, she stated she needed it. Gill, however, never saw the appellant use the monitor and he later found it stored away in a cabinet. Since the monitor was Gill's personal property, he returned it to Walden for his use. *Id*.

While initially denying this specification in her response to the proposed removal (IAF, Tab 17, p. 5), at the hearing the appellant did not dispute she removed Walden's second monitor. HT 7/27/20, pp. 197-199. The appellant asserted a generalized business need to take the monitor, claiming it was not fair for Walden to have two when other employees did not have the equipment they needed, and that the monitor belonged to another staff member. As found above, I do not find the appellant's testimony to be credible. Specific to this incident, the appellant failed to credibly explain why she did not return the computer monitor to Gill if she believed it was not appropriate for Walden to have two monitors.

I find the agency has proven this specification. The appellant engaged in the charged conduct – taking Walden's second computer monitor away from him – and the agency has proven the appellant had no legitimate government reason for taking the monitor owned by Gill away from Walden and storing it in her office; therefore I find her behavior towards Walden was inappropriate.

Specification 2 involved an incident which occurred on April 3, 2018. IAF, Tab 11, p. 5. The agency charged:

> On April 3, 2018, you instructed Isaac Walden to remove his gear from a cabinet that he had been using for several years. You did not have a legitimate business need for denying him access to this cabinet.

*Id*. I find, and it is undisputed by the parties, that Walden used a cabinet to store his gear for several years and the appellant instructed him to move his gear. HT 7/27/2020, pp. 204-05. Walden explained that when they moved into their current space in 2013 someone had thrown a locker into the dumpster; he retrieved it and

began using it to store his gear.  HT 6/23/20, pp. 142-44.  Other staff stored gear on shelves in milk crates or laundry baskets in the saw room.  *Id*.  After using the locker for over five years, the appellant directed him to empty it out of his gear saying it would not be fair for him to have a locker when no one else did.  *Id*.

The appellant claimed the cabinet was in a shared space where others kept their tools and was also in a space shared with other different district entities.  HT 7/27/20, pp. 204-05.  The appellant contended that the cabinet was in space others needed.  In addition, no one else had a locker and it was not fair for Walden to have one.  *Id*.; *see also*, IAF, Tab 17, p. 5.  However, the appellant provided no credible explanation why after five years the locker was suddenly an issue.  There was no credible corroborating evidence that anyone had a concern about the locker or its location.

As found above, I do not find the appellant's testimony to be credible.  I find the agency has proven this specification by preponderant evidence.  The appellant engaged in the charged conduct – ordered Walden to empty out the locker and cease using it – and the agency has proven the appellant had no legitimate government reason for directing Walden to cease using the locker; therefore, I find her behavior towards Walden was inappropriate.

Specification 3 involved an incident which occurred on April 16, 2018.  IAF, Tab 11, p. 5.  The agency charged:

> On April 16, 2018, you directed Isaac Walden to move out of the Captain's office into a hallway without walls. You did not have a legitimate business need for requiring him to move out of the Captain's office.

*Id*.  I find, and it is undisputed by the parties, that the appellant directed Walden to move out of the office he occupied into the hallway.

Walden explained that in April 2018, he shared an office with Gill, the other assistant superintendent.  HT 6/23/20, pp. 144-52.  Since 2013, the office had been configured to be shared by the two assistant superintendents.  *Id*.  The appellant directed Walden to move into an open space in a hallway section of the

building.  *Id*.  Gill, however, was not directed to move and remained in the office. The appellant told Walden that she wanted them closer to squads, so he was being moved to a location with his squad leader.  *Id*.  The District Ranger, Irene Davidson, reversed the appellant's directive on April 19, 2018, but the appellant never advised Walden he could return to the office he shared with Gill.  *Id*., and IAF, Tab 12, p. 27.  On April 23, 2018, Walden asked the appellant about the April 19 directive and what should he do because it had been provided to him by the appellant's supervisor on April 19; specifically, the appellant had not directed him to move back to the office. *Id*.  The appellant responded that the decision was made above her level.  Even though the appellant failed to direct him to move back into the shared office with Gill, Walden nonetheless moved back to his old office. *Id*.

The appellant admitted having Walden move his office asserting that she wanted him co-located with subordinates to improve the communication among the hot shot crew, which would then extend into the field.  HT 7/27/20, pp. 207-08.

As found above, I do not find the appellant's testimony to be credible.  I find the agency has proven this specification.  The appellant engaged in the charged conduct – ordering Walden to move out of his office into the open space area – and the agency has proven the appellant had no legitimate government reason for directing Walden's move; therefore, I find her treatment of Walden was inappropriate.

In summary, I find the agency has proven all three specifications and the charge of conduct unbecoming a federal supervisor is SUSTAINED.

The agency has proven Charge C, Failure to Follow Supervisory Instructions

The agency charged the appellant with failure to follow supervisory instructions supported by thirteen specifications.  IAF, Tab 11, pp. 5-7.  For specifications 1 through 6, which are described further below, the appellant contended in response to the notice of proposed removal that "Specifications 1-6:

include dates while I was out on FMLA and not available for work in accordance with FMLA policy. . . Accusations of not following instructions during FMLA, are not applicable due to FMLA status and supervisory responsibility to work through legal counsel and not contact employee. This supervisory responsibility was not adhered to do therefore the harassment during FMLA negatively impacted my health, further." IAF, Tab 17, p. 8.

In Specification 1, the agency charged that:

On March 27, 2019, you were instructed to change your supervisor in Paycheck8 to your new supervisor, Jamie Tripp. You failed to follow instructions when you changed your supervisor to Nora Rasure.

IAF, Tab 11, p. 5. I find, and it is undisputed, that in a March 27, 2019 email, Tripp advised the appellant that she (Tripp) was now her supervisor and directed the appellant to go into the time and attendance system, Paycheck 8, and designate Tripp as her supervisor for payroll purposes. *Id*., p. 53. The appellant failed to follow Tripp's instruction and instead designated Nora Rasure, her 4th level supervisor, as her supervisor in the time and attendance system. *Id*., p. 55.; HT 6/24/20, p. 28. I find the appellant failed to follow Tripp's supervisory directive and was aware of the directive since the appellant designated Rasure as her supervisor in the payroll system rather than Tripp. I also find the record is devoid of any credible evidence that following Tripp's directive would in any way cause the appellant irreparable harm. Accordingly, the agency has proven this specification by preponderant evidence.

In Specification 2, the agency charged that:

On April 5, 2019, you were instructed to correct your Pay Period 5 timesheet to reflect 1.5 hours of official time on March 14, 2019 and the remaining 78.5 hours as AWOL, no later than April 8, 2019. You failed to correct and resubmit your Pay Period 5 time sheet as instructed.

IAF, Tab 11, p. 5. I find, and it is undisputed, that in an April 5, 2019 email Tripp directed the appellant to change and resubmit her time sheet for Pay Period 5, which covered the dates March 3, 2019 to March 16, 2019 (*Id*., p. 132), to

reflect 1.5 hours of official time on March 14 and 78.5 hours of AWOL for the rest of the pay period. *Id*., p. 66. The appellant failed to follow Tripp's direction. As found above, the record is devoid of any credible evidence of any FMLA requests addressing the March 4, 2019 to March 16, 2019 time period. Despite her assertions (IAF, Tab 17, p. 8), the appellant was not on authorized FMLA leave. I find the appellant failed to follow Tripp's supervisory directive and the record is devoid of any credible evidence that following Tripp's directive would in any way cause the appellant irreparable harm. Accordingly, the agency has proven this specification by preponderant evidence.

In Specification 3, the agency charged that:

On April 12, 2019, you were instructed to provide additional information identifying what you were working on for each block of time you requested as official time during Pay Period 5 and Pay Period 6. You failed to provide the additional information as instructed.

IAF, Tab 11, p. 5. I find, and it is undisputed, that in an April 12, 2019 email Tripp directed the appellant to provide additional information to support her request for official time to speak with the Office of Inspector General (OIG) and EEOC. *Id*., p. 88. The appellant failed to follow Tripp's direction. Since the appellant was requesting the use of official time for her activities and not FMLA, I find unpersuasive her assertion (IAF, Tab 17, p. 8) that she was on FMLA leave and management was required to communicate with her only through her counsel. I find the appellant failed to follow Tripp's supervisory directive and the record is devoid of any credible evidence that following Tripp's directive would in any way cause the appellant irreparable harm. Accordingly, the agency has proven this specification by preponderant evidence.

In Specification 4, the agency charged that:

On May 15, 2019, you were instructed to correct your Pay Period 9 time sheet, by recoding 6.75 hours on May 5, 2019, claimed as Sunday Differential time to either credit hours or travel comp time. You failed to update your Pay Period 9 timesheet as instructed.

IAF, Tab 11, p. 5.  I find, and it is undisputed, that in a May 15, 2019 email Tripp had directed the appellant to code her timesheet with credit hours or travel compensatory time.  IAF, Tab 12, p. 46.  The appellant failed to comply with Tripp's direction.  Since the appellant was requesting credit for official worktime, I find unpersuasive her assertion (IAF, Tab 17, p. 8) that she was on FMLA leave and management was required to communicate with her only through her counsel. I find the appellant failed to follow Tripp's supervisory directive and the record is devoid of any credible evidence that following Tripp's directive would in any way cause the appellant irreparable harm.  Accordingly, the agency has proven this specification by preponderant evidence.

In Specification 5, the agency charged that:

On June 12, 2019, you were instructed to remove the official time claimed to work on EEO related items on June 4 and June 6, 2019, that you entered on your Pay Period 11 timesheet, which you had not requested in writing nor received authorization for, prior to using the official time. You failed to follow instructions by not correcting your Pay Period 11 time sheet.

IAF, Tab 11, p. 6.  I find, and it is undisputed, that on June 12, 2019 McClung rejected approval of the appellant's timesheet and directed the appellant to change her time sheet for Pay Period 11 noting:

I am rejecting this timesheet because Ms. Messal did not request prior approval for official time (01) that was claimed on 6/4 and 6/6. Official time charged on 5/28 was authorized and is approved. I am having this timesheet corrected to show 2 hours of official time and 78 hours of LWOP.

It is PAMELA MESSAL's responsibility to make any needed changes and submit the changed T & A Report before TERESA MCCLUNG will be able to review and approve this T&A Report.

IAF, Tab 12, p. 103.  The appellant failed to change her timesheet as directed by McClung. Since the appellant was requesting the use of official time for her activities and not FMLA leave, I find unpersuasive her assertion (IAF, Tab 17, p. 8) that she was on FMLA leave and management was required to communicate with her only through her counsel.  I find the appellant failed to follow

McClung's supervisory directive and the record is devoid of any credible evidence that following McClung's directive would in any way cause the appellant irreparable harm. Accordingly, the agency has proven this specification by preponderant evidence.

> In Specification 6, the agency charged that:

> On July 10, 2019, you were instructed to remove five hours of official time for May 6, 2019, that you entered on your Pay Period 9 timesheet which you had not requested in writing nor received authorization for, prior to using the official time. You failed to follow instructions to code your Pay Period 9 timesheet properly.

IAF, Tab 11, p. 6. I find, and it is undisputed, that on July 10, 2019 McClung rejected approval of the appellant's Pay Period 9 timesheet and again directed the appellant to change her timesheet noting:

> Ms. Messal was directed by Ms. Tripp to change claimed Sunday differential hours on 5/5 to comp travel, which she did. In Corrected pp9 timesheet Ms. Messal also added 5 hrs 01 time on 5/6 and 1 hr 01 time on 5/8 which were not claimed on the original timesheet. These additional hours of official time were not authorized on the original timesheet and need to be removed..

> It is PAMELA MESSAL's responsibility to make any needed changes and submit the changed T & A Report before TERESA MCCLUNG will be able to review and approve this T&A Report.

IAF, Tab 12, p. 55. The appellant failed to change her timesheet as directed by McClung. Since the appellant was requesting the use of official time for her activities and not FMLA leave, I find unpersuasive her assertion (IAF, Tab 17, p. 8) that she was on FMLA leave and management was required to communicate with her only through her counsel. In addition, the appellant's disagreement with management's decision about how she was to code her timesheet is not a basis for disregarding a supervisory directive; a matter she could challenge later. *Larson v. Department of the Army*, 91 M.S.P.R. 511, ¶ 21 (2002) (an employee first must comply with an order and then, if she disagrees with the order, register her complaint or grievance later, except in certain limited circumstances, such as when obedience would cause her irreparable harm.) I find the appellant failed to

follow McClung's supervisory directive and the record is devoid of any credible evidence that following McClung's directive would in any way cause the appellant irreparable harm. Accordingly, the agency has proven this specification by preponderant evidence.

Specifications 7, 8 and 9 are related. In Specification 7, the agency charged that:

> On October 15, 2019, you were instructed to correct the LWOP on 10/10/19 that you entered on your Pay Period 20 timesheet which you had not received prior authorization to use, and replace it with another type of leave. You resubmitted your Pay Period 20 timesheet on October 15, 2019 without the corrections. You failed to follow instructions to code your Pay Period 20 timesheet properly.

IAF, Tab 11, p. 6. In Specification 8, the agency charged that:

> On October 16, 2019,[3] you were instructed to correct the 3.5 hours of LWOP on 10/10/19 that you entered on your Pay Period 20 timesheet which you had not received prior authorization to use, and replace it with another type of leave. You resubmitted your Pay Period 20 timesheet a second time on October 15, 2019 without the corrections. You failed to follow instructions to code your Pay Period 20 timesheet properly.

IAF, Tab 11, p. 6. In Specification 9, the agency charged that:

> On October 16, 2019, you were instructed to submit a corrected Pay Period 20 time sheet the week of October 20-26,2019, correcting the 3.5 hours of LWOP on 10/10/19 that you entered on your Pay Period 20 timesheet which you had not received prior authorization to use, and replace it with another type of leave. You did not submit a corrected timesheet until October 31, 2019. You failed to follow instructions to submit a corrected Pay Period 20 timesheet the week of October 20-26, 2019.

IAF, Tab 11, p. 6.

I find, and it is undisputed, that on October 15, 2019 at 5:48 p.m. McClung rejected approval of the appellant's Pay Period 20 timesheet because she claimed 3.25 hours of Leave Without Pay without the required prior approval. McClung instructed the appellant to "Please change those hours to another type of leave

---

[3]It is apparent this is a typo by the agency and should have read October 15, 2019.

and then the timesheet can be approved." IAF, Tab 12, p. 155. The appellant failed to change her time sheet as directed by McClung. Instead, the appellant immediately resubmitted her Pay Period 20 timesheet again on October 15, 2019 which McClung again rejected at 6:00 p.m. *Id.*, pp. 157; 159.

On October 16, 2019, the appellant submitted the timesheet for the third time without making any of the changes directed by McClung. McClung approved the time sheet but sent an October 16, 2019 email at 3:55 p.m. stating:

Pamela-

Yesterday you submitted your PP20 timesheet to me claiming 3.25 hours of LWOP on 10/10/19. I rejected the timesheet with the explanation that because you did not seek prior approval for LWOP, I could not approve your timesheet as submitted. I instructed you to resubmit the timesheet with another type of leave coded for those hours on 10/10/19.

You resubmitted PP20 timesheet yesterday without the requested change, and I rejected it again. This morning you resubmitted the timesheet again without the requested changes. I went ahead and approved your PP20 timesheet so you will get paid, but you will need to submit a corrected PP20 timesheet next week. Since you have no sick leave available to use, you can use annual leave to cover the 3.25 hours of LWOP.

IAF, Tab 12, p. 159.

The appellant responded to McClung claiming in an October 16, 2019 email at 4:44 pm:

Ms. McClung,

Below is the first message I have received from you regarding pay period 20. I do not have any messages from you regarding you rejecting my time sheet. I was not informed until right now that you even rejected my pay period 20 time. This is new news to me. What you wrote below is misleading and accusatory due to the fact that your message below is the first correspondence I have received from you regarding pay period 20.

I submitted my time to make sure it had been sent since my coverage was spotty.

> Since I have not received any information about this from you to date
> prior to this email below, what is this claim below about?
>
> You are aware I am currently on approved leave.
>
> Please send me the policy that shows LWOP cannot be used for an
> Emergency.
>
> Pamela

IAF, Tab 12, p. 161.  On October 30, 2019, McClung sent an email responding to
the appellant advising her the LWOP code she was using was the code for LWOP
"used in conjunction with emergency military time off because an employee has
exceeded their allocation of military time for the year." *Id*., p. 164.  McClung
again directed the appellant to change her timesheet by October 31.  *Id*.   The
appellant failed to comply.

In response to the notice of proposed removal, for these three specifications
the appellant contended that "I was on pre approved annual leave and received no
communication regarding this on this date therefore the charge and specifications
cannot be sustained."  IAF, Tab 17, pp. 6-7.  I find the appellant's contention not
credible since she was sending emails to McClung challenging the instructions to
change her timesheet.  I find the appellant failed to follow McClung's supervisory
directives and the record is devoid of any credible evidence that following
McClung's directive would in any way cause the appellant irreparable harm.
Accordingly, the agency has proven specifications 7-9 by preponderant evidence.

In Specification 10, the agency charged that:

> On October 22, 2019, you were instructed to attend a meeting at 2:00
> pm to review your progress on the thumb drive project and the
> efforts to get your computer functioning properly with your
> supervisor. You failed to follow instructions and did not attend the
> meeting at 2:00 pm.

IAF, Tab 11, p. 6.  I find, and it is undisputed, that on October 22, 2019 at 12:21
p.m., McClung sent an email directing her to attend a meeting that afternoon at 2
p.m. to discuss a work project and her computer issues.  IAF, Tab 12, p. 201; HT
6/24/2019, p. 169.   But, as found above, McClung changed the meeting to

October 23 at 10:30 a.m. when the appellant advised her that she was not available on October 22 at 2:00 p.m.  IAF, Tab 12, p. 208.  Accordingly, I find the agency has failed to prove this specification.

Specification 11 is addressed above and is proven.

Specifications 12 and 13 are related.  In Specification 12, the agency charged that:

> On October 29, 2019, you were instructed to correct your Pay Period 21 timesheet to reflect 8 hours AWOL on 10/23/19 and 10/24/19. You failed to follow instructions to correct your Pay Period 21 timesheet.

IAF, Tab 11, p. 6.  In Specification 13, the agency charged:

> On November 4, 2019, you were instructed to correct your Pay Period 21 timesheet to reflect 7.0 hours AWOL (time code 72) on 10/23/19 and 8.0 hours AWOL (time code 72) on 10/24/19, and submit your timesheet no later than 10:30 AM on November 5, 2019. You failed to follow instructions to correct and submit your Pay Period 21 timesheet.

IAF, Tab 11, pp. 6-7.

I find, and it is undisputed that on October 29, 2019, McClung rejected the appellant's Pay Period timesheet, directing her to code 8 hours of AWOL for 10/23/19 and 10/24/19.  IAF, Tab 12, p. 166.  Specifically, McClung stated in the reject notice to the appellant:

> Ms. Messal was absent from work on 10/23/19 and 10/24/19.
>
> She did not have prior approval to telework or use LWOP or annual leave, which she has shown on this timesheet. In addition, Ms. Messal requested and was granted annual leave from 10/15-18/19. She never requested to use any other type of code than the previously approved AL, for her time spent on response to the proposed suspension. This timesheet needs to be corrected to show 8 hours AWOL for 10/23/19 and 10/24/19 in order to be approved.
>
> It is PAMELA MESSAL's responsibility to make any needed changes and submit the changed T & A Report before TERESA MCCLUNG will be able to review and approve this T&A Report.

*Id*.  The appellant failed to make the directed change.

I find, and it is undisputed, that in a November 4, 2019 email Dunkelberger ordered the appellant to change her Pay Period 21 timesheet, stating:

> I am directing you to change your PP 21 timesheet to reflect that you were not on approved leave on 10/23 and 10/24.

> Please correct your time to reflect 7.0 hours AWOL (time code 72) on 10/23/19 and 8.0 hours AWOL (time code 72) on 10/24/19. You will need to do this and submit your timesheet no later than 10:30 AM tomorrow (11/2/19).

> If you do not make these changes and submit a corrected time sheet by then, the ASC pay branch will make the changes for you and submit for approval.

IAF, Tab 12, p. 176.  The appellant refused to comply with the directive.  *Id*., pp. 178-79.

The appellant contended that management had no right to direct her to falsify her timesheet and that she had been ill enough to go to the hospital.  IAF, Tab 17, p. 7.

The appellant's disagreement with management's decision about how she was to code her timesheet is not a basis for disregarding a supervisory directive. *Larson,* 91 M.S.P.R. 511, ¶ 21.  I find the appellant failed to follow the directives of McClung and Dunkelberger and the record is devoid of any credible evidence that following these two directives would in any way cause the appellant irreparable harm.  Accordingly, I find the agency has proven specifications 12 and 13 by preponderant evidence.

In summary, I find the agency has proven all of the specifications for Charge C except specification 10.  When more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge.  *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990).  Accordingly, the charge of failure to follow supervisory instructions is SUSTAINED.

<u>The agency has failed to prove Charge E, Failure to Follow Agency Policy</u>

The agency charged the appellant with failure to follow agency policy, supported by two specifications.  IAF, Tab 11, p. 7.

The agency claimed that during the meeting on October 9, 2019 where the Notice of Proposed Suspension for 14-days was issued to the appellant, the appellant recorded her conversation with Derek Ibarguen (telephonic) (specification 1) and Teresa McClung (in-person) (specification 2) without all of the parties' agreement in advance.  IAF, Tab 11, p. 7.  The agency asserted that at no time during the conversation did the appellant ask for permission to record the conversation.  *Id.*

It is undisputed that on October 9, 2019, the appellant met with her supervisor McClung, Deputy Forest Supervisor, Derek Ibarguen, Deputy Forest Supervisor-Bridger-Teton National Forest, and Donald Harris, Forest Service LE&I Patrol Captain.  McClung and Harris were in person with the appellant while Ibarguen was on the telephone.  Prior to the commencement of the meeting, the appellant advised the participants that she would be recording the meeting, she took out a recording device, and proceeded to record the meeting.  I find, and it is undisputed, that none of the attendees objected to the appellant recording the meeting.  HT 6/24/21, pp. 112-13; 169; 191-93.

The agency alleged the appellant "violated Department Regulation 4070-735-001, Section 11 Prohibited Activities, Paragraph G, which states in part the following is prohibited, 'Monitoring telephone conversations, recording telephone conversations by device, or authorizing or permitting others under their administrative control to monitor telephone conversations or record telephone conversations by device ... except (2) When all parties agree in advance.'  And, Department Regulation 4070-735-001, Section 11 Prohibited Activities, Paragraph H, which state in part the following is prohibited, 'Utilizing any device to monitor or record non-telephone conversations, except ... (2) When all parties agree in advance.'"  IAF, Tab 11, p. 7.

The agency argues the appellant did not obtain affirmative consent from all of the participants to record the meeting prior to the meeting. I find the agency's contention unpersuasive. At the beginning of the meeting, the appellant announced to all of the participants that she was recording the meeting. At no point during the meeting did any of the participants object to the appellant's recording the meeting, even though they had ample opportunity to do so. Accordingly, I find the agency has failed to prove the appellant failed to follow agency policy by preponderant evidence and therefore the charge is NOT SUSTAINED.

Affirmative Defense: Procedural due process and/or harmful procedural error

The appellant contends that the agency committed harmful error and violated her procedural due process rights by (1) allegedly failing to conduct a fair and impartial investigation into the allegations forming the basis of her removal, and (2) failing to grant her an extension of time to respond to the Notice of Proposed Removal due to a medical condition, thereby denying her a reasonable right to respond to the allegations. IAF, Tab 29, pp. 13-14 and Tab 64, pp. 18-20.

A procedural due process claim is premised upon an agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action. If an agency fails to provide an opportunity to respond to a proposed adverse action, then an appellant has been deprived of her property right in her employment which constitutes an abridgement of her constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).

The affirmative defense of harmful procedural error is defined as an "Error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. The burden is upon the appellant to show that the

error was harmful, i.e., that it caused substantial harm or prejudice to his or her rights." 5 C.F.R. 1201.4(r). Harmful error under 5 U.S.C. § 7701(c)(2)(A) cannot be presumed; an agency error is harmful only where the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991).

I find preponderant evidence in the record established that the appellant was provided the minimum due process required by *Loudermill* – prior notice and an opportunity to respond. I note the appellant provided a detailed response both written and oral to the agency's notice of proposed removal, establishing that she was able to exercise her right to respond.

Other than a bare allegation that the investigation into the appellant's misconduct was not fair or impartial, the appellant has failed to identify with any specificity as to why the investigation was unfair, other than to contend that she did not engage in misconduct and she was the victim of harassment by management. *See*, IAF, Tab 29, pp. 13-14 and Tab 64, pp. 18-20. Accordingly, I find the appellant has failed to establish that the agency's investigation of the charges was biased and constituted error. *See Vakili v. Department of Agriculture*, 35 M.S.P.R. 534, 538-39 (1987) citing *Baracco v. Department of Transportation*, 15 M.S.P.R. 112, 123 (1983), *aff'd*, 735 F.2d 488 (Fed.Cir.1984) (finding agency investigation of charges was not harmful error; reversal of action warranted only where procedural error, whether regulatory or statutory, likely had a harmful effect upon the outcome of the case before agency).

I also find the appellant has failed to identify or establish any error in the agency's removal procedures that were in anyway harmful, i.e. "that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." Specifically, the appellant has failed to present any credible evidence that there was information or documentation that she could have provided to the deciding official in response to the notice of

proposed removal that the seven-day response period prevented her from presenting and that would have caused Rosenkrance to reach a different decision. In summary, I find the appellant has failed to prove the affirmative defense of violation of her procedural due process rights and/or harmful procedural error by the requisite preponderant evidence.

<u>Affirmative Defense: Disability discrimination</u>

The appellant asserted her removal was a product of disability discrimination, both a failure to accommodate and disparate treatment. The appellant bears the burden of proving her affirmative defense of disability discrimination by preponderant evidence. 5 C.F.R. § 1201.56(b)(2)(i)(C).

As an initial matter, pursuant to the Americans with Disabilities Act Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (ADAAA),[4] an appellant may prove that she has a disability by showing that she (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1), 29 C.F.R. § 1630.2(g)(1),(2), (3). The definition of disability is construed in favor of broad coverage. 42 U.S.C. § 12102(4)(A). I find, and it is undisputed, that the appellant suffered from migraines, Post Traumatic Stress Disorder (PTSD), anxiety, and depression. I find therefore she is an individual with a disability under the ADAAA.

*Failure to Accommodate*

To establish a prima facie case of disability discrimination based on a failure to accommodate, the appellant must show: (a) that she is an individual with a disability under 29 C.F.R. § 1630.2(g) and that the action appealed to the Board was based upon her disability; and (b) that she is a qualified individual

---

[4] As a federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973. However, the Equal Employment Opportunity Commission (EEOC) regulations implementing the ADA, as amended by the ADAA, have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. Those regulations are found at 29 C.F.R. Part 1630.

with a disability; that is, that she satisfies the requisite skill, experience, education, and other job-related requirements of the position she holds or desires and can perform the essential functions of the position with or without reasonable accommodation. *See* 29 C.F.R. §§ 1630.2(m), 1630.3. After the appellant has established a prima facie case, the burden shifts to the agency to demonstrate that reasonable accommodation would impose an undue hardship on its operations. Thereafter, the burden shifts back to the appellant to show that the agency's reasons are a pretext for discrimination. Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions. EEOC Notice No. 915.002, Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (Oct. 17, 2002) (EEOC Guidance); *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014).

Undisputed record evidence establishes that the agency asked the appellant if she was seeking an accommodation under the ADAA. On July 26, 2019, she specifically said no. IAF, Tab 12, p. 152. The agency cannot provide an accommodation unless the appellant wants one. As found above, the appellant was subject to the fire medical qualifications program and must meet firefighter arduous duty medical standards. IAF, Tab 15, pp. 75-77. On August 29, 2019, Jennifer Symonds, D.O., Fire & Aviation Management Medical Officer, Fire Medical Qualifications Program Manager, USDA Forest Service, Washington Office, Fire & Aviation Management, contacted the appellant seeking information about her medical condition because the appellant "may not meet the firefighter arduous duty Medical Standards with some recent medical care that you received." *Id*., p. 77. Instead of providing the information requested by the agency's medical officer, the appellant refused to cooperate, accusing the agency of harassing her. *Id*., pp. 76-77. The appellant stated "I explained to you that I have been back at work successfully for some time now, have passed my physical

pack test and fire refresher and am an able bodied and minded fire fighter." *Id.*, p. 76. At no point did the appellant indicate she had medical issues interfering with her ability to perform her duties, and by inference, that would require an accommodation.

The appellant contends the agency failed to accommodate her when it charged her with AWOL and failure to follow leave procedures. However, as found in detail above, the agency approved the appellant's leave when she submitted administratively acceptable medical documentation; she was only charged with AWOL and failure to follow leave procedures when she failed to provide administratively acceptable documentation.

What the appellant is seeking is an accommodation where she should have been allowed to be AWOL and to disregard leave procedures. The appellant, however, denied any misconduct and has also failed to submit any credible evidence showing that the proven misconduct was caused by her medical condition. Accordingly, I find that the appellant has failed to prove that her disability caused the misconduct or that it was entirely a manifestation of her disability. *See Burton v. U.S. Postal Service*, 112 M.S.P.R. 115, ¶ 15 (2009) (citing *Brinkley v. Veterans Administration*, 37 M.S.P.R. 682, 684 (1988)); *see Noguera v. U.S. Postal Service*, 45 M.S.P.R. 156, 161 (1990) (the appellant's claim that he suffered a general loss of judgment because of his abuse of the drug to which he was addicted cannot insulate him from discipline for the willful acts of misconduct committed independently from that condition). Even assuming the appellant could show her removal was based on her disability, her claim would fail as an employee who engages in misconduct is not entitled to an accommodation. *Burton*, 112 M.S.P.R. 115, ¶ 18. Neither the Rehabilitation Act nor the Americans with Disabilities Act immunizes disabled employees from being disciplined for misconduct in the workplace, provided the agency would impose the same discipline on an employee without a disability. *Burton*, 112 M.S.P.R. 115, ¶ 16 (citing *Laniewicz v. Department of Veterans Affairs*, 83

M.S.P.R. 477, ¶ 5 (1999)).  Accordingly, I find the appellant has failed to prove by preponderant evidence her claim of disability discrimination by failure to accommodate.

*Disparate Treatment*

To prove disability discrimination based on disparate treatment, the appellant must establish by preponderant evidence that her disability was a "motivating factor" in the agency's decision, even if other factors also motivated the practice.  *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 23 (2013).  Under a mixed-motive analysis, an employee is entitled to some relief if she proves that her disability was "a motivating factor" in the decision, "even though other factors also motivated the practice."  *Id.,* ¶ 23 (citing 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(1)).

With regards to her claim of disparate treatment based upon her disabilities, the Board has held that a mixed motive analysis is appropriate in disability discrimination claims arising under the ADAAA and that the appellant need not prove that but for the discrimination, the action would not have been taken.  Pursuant to 29 C.F.R. § 1630.2(l)(3), liability under the ADAAA is established only when the appellant proves by a preponderance of the evidence that the agency discriminated on the basis of disability, as defined  by 42 U.S.C. § 12112.  Further, under a mixed motive analysis, the appellant's remedy is limited if the agency demonstrates, by clear and convincing evidence, that it would have taken the same action absent the discriminatory motive.  *See Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 23 (2013).

I find that the record is devoid of any credible evidence that Rosenkrance was motivated by a discriminatory intent due to the appellant's disabilities. While Rosenkrance was aware of the appellant's medical issues based upon the documentation supporting the proposed removal and the appellant's oral and written responses, ample evidence in the record demonstrates that Rosenkrance's removal decision was premised upon the appellant's refusal to acknowledge or

take responsibility for any of her misconduct. In addition, the record is devoid of any credible evidence that a similarly situated employee who was not disabled but (1) failed to follow leave procedures and was AWOL, (2) engaged in misconduct unbecoming a supervisor, and (3) failed to repeatedly follow supervisory instructions was treated differently from the appellant.

Accordingly, I find the appellant has failed to meet her burden of proving disability discrimination based on disparate treatment.

Affirmative defense of discrimination (sex) - disparate treatment

To establish a claim of prohibited employment discrimination in the form of disparate treatment, the employee first must establish a *prima facie* case; the burden of going forward then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its action; and, finally, the employee must show that the agency's stated reason is merely a pretext for prohibited discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).

In making her initial showing, an appellant may rely on direct evidence (i.e., evidence that can be interpreted as an acknowledgment of discriminatory intent), or any of the three types of circumstantial evidence, either alone or in combination. The first kind consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. The second kind of circumstantial evidence is comparator evidence, consisting of evidence that similarly situated employees were treated more favorably. The third kind consists of evidence that the agency's stated reason for its action is unworthy of belief and a mere pretext for discrimination. *See Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 42 (2015). If the appellant meets her burden, the Board then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the retaliatory or discriminatory motive. *Id.*

Aside from her bare allegation of sex discrimination, the appellant failed to submit any evidence to support her claim. Instead the appellant effectively argues that in the absence of any other explanation, the agency's actions were based on prohibited discrimination merely because she is a female. I find that the record is devoid of any credible evidence that Rosenkrance was motivated by a discriminatory animus due to the appellant's sex. In addition, the record is devoid of any credible evidence that a similarly situated male employee was

treated differently from the appellant for the same misconduct. Without supporting evidence, I find the appellant's allegations insufficient to prove her claim by preponderant evidence that Rosenkrance's decision to remove her for her proven misconduct was a pretext for sex discrimination.

Affirmative defense of retaliation (EEO and OSHA activities)

The appellant has alleged she was removed in retaliation for her protected EEO activities and OSHA complaints. IAF, Tab 29, pp. 12-13. Under 5 U.S.C. § 2302(b)(9) it is a prohibited personnel action to "take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of— (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation." The appellant has the burden of proving her affirmative defense of retaliation for protected activities under section 2302(b)(9) by a preponderance of the evidence. 5 C.F.R. § 1201.56(b)(2)(i)(C). For an appellant to prove retaliation, she must show that: (1) she engaged in a protected activity; (2) the accused official knew of the protected activity; (3) the agency action under review (removal) could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the agency's action. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 28-31 (2016).

I find, and it is undisputed, that the appellant engaged in various protected 2302(b)(9) activities when she filed EEO complaints between April 2018 and November 2019, a grievance in November 2019, a OSHA complaint in October 2018 and a second complaint filed in December 2019. IAF, Tab 29, pp. 12-13. Accordingly, I find the appellant has established by preponderant evidence prong 1. I also find, and it is undisputed, Rosenkrance was generally aware of the appellant's protected activities when he made his removal decision. HT 7/27/2020, p. 112. Therefore, I find the appellant has established prong 2 by preponderant evidence.

With regards to prongs 3 and 4, I find the record is devoid of any credible evidence that Rosenkrance's removal decision could have been retaliation under the circumstances or that there was a genuine nexus between the alleged retaliation and the agency's action. The record is devoid of any credible evidence that any of the appellant's EEO complaints or OSHA complaint involved Rosenkrance or had any impact upon him. Rosenkrance credibly testified that he had not previously met the appellant prior to the proposed removal, and thus had no personal basis for retaliating against her. Therefore, I find the appellant has failed to establish prongs 3 and 4 by preponderant evidence. Accordingly, I find the appellant has failed to establish Rosenkrance's removal decision was in reprisal for her protected activities.

Affirmative Defense:  Reprisal for whistleblowing activities and/or disclosures

The appellant has asserted her removal was in reprisal for her protected whistleblowing disclosures and activities.  To prove a claim of reprisal for whistleblowing, the appellant must show by a preponderance of the evidence that she made a disclosure protected under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the disclosure or activity was a contributing factor in the agency's personnel action, in this case a removal action. *Grubb v. Department of the Interior*, 96 M.S.P.R. 361, ¶ 11 (2004); *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 70 (2001), *rev. dismissed*, 32 Fed. Appx. 543 (Fed. Cir. 2002).

A protected disclosure under § 2302(b)(8) is "any disclosure of information" by an employee that the employee "reasonably believes" evidences (a) a violation of any law, rule, or regulation or (b) gross mismanagement, a gross waste of funds, an abuse of authority, or (c) a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law.  5 U.S.C. § 2302(b)(8).  The protected status of a disclosure depends not on whether it in fact discloses wrongdoing, but on whether a reasonable person would believe

that what the disclosure reports is evidence of such wrongdoing. *Special Counsel v. Spears*, 75 M.S.P.R. 639, 659 (1997).

A whistleblowing "disclosure" is defined at 5 U.S.C. § 2302(a)(2)(D) as "a formal or informal communication or transmission, but does not include a communication concerning policy decisions that lawfully exercise discretionary authority unless the employee or applicant providing the disclosure reasonably believes that the disclosure evidences-(i) any violation of any law, rule, or regulation; or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *See* 5 U.S.C. § 2302(b)(8).

As found by the Board in *Nasuti v. Department of State*, 120 M.S.P.R. 588 (2014), 5 U.S.C. § 2302(f), provides that a disclosure shall not be excluded from the coverage because it was made to a supervisor or to a person who participated in an activity that the discloser reasonably believed evidenced any violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(f)(1)(A); *see* 5 U.S.C. § 2302(b)(8)(A). The statute also provides that a disclosure is protected regardless of the individual's motives for making the disclosure, even if the disclosure revealed information that had been previously disclosed, was not made in writing, was made while the employee was off duty, and regardless of the amount of time which has passed since the occurrence of events described in the disclosure. 5 U.S.C. § 2302(f)(1)(B)-(F). Finally, disclosures made in the normal course of an employee's duties are not excluded from protection. *Id*.

In addition, pursuant to the Whistleblower Protection Enhancement Act of 2012 (WPEA) amendments codified at 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), it is unlawful to take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of (A) the exercise of any appeal, complaint or grievance right granted by any law,

rule, or regulation with regard to remedying a violation of section 2302(b)(8), . . . ; (B) testifying for or otherwise lawfully assisting any individual in the exercise of any appeal, complaint or grievance right granted by any law, rule, or regulation; (C) cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law; or (D) refusing to obey an order that would require an individual to violate a law, rule, or regulation.

The appellant may show that a protected disclosure or activity was a contributing factor in the agency taking or failing to take a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Weed v. Social Security Administration*, 113 M.S.P.R. 221, ¶ 22 (2010).

If the appellant meets her evidentiary burdens, the burden of persuasion then shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action absent any disclosure.[5]  In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of protected disclosures under 5 U.S.C. § 2302(b)(8), the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers, or who did not engage in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).  "Evidence only clearly and convincingly supports a

---

[5] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established.  5 C.F.R. § 1209.4(e).

conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly distracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 44 (2011), *aff'd*, 497 F.App'x 4 (Fed. Cir. 2012), *cert. denied*, 134 S. Ct. 386 (2013).

The appellant alleges she made protected disclosures in her OSHA and OIG complaints. IAF, Tab 31, p. 12 and Tab 64, p. 18. However, the appellant did not submit into the record copies of the complaints and the record is devoid of any credible evidence of the content of the complaints and whether they disclosed a reasonable belief that there was "(a) a violation of any law, rule, or regulation or (b) gross mismanagement, a gross waste of funds, an abuse of authority, or (c) a substantial and specific danger to public health or safety."[6]

However, in filing an OIG complaint the appellant has established by preponderant evidence that she engaged in a protected activity under 5 U.S.C. § 2302(b)(9)(C). I also find the appellant has established by preponderant evidence that her protected OIG complaint was a contributing factor in Rosenkrance's decision to remove her from the federal service. Rosenkrance conceded that while he had no specific recollection of her OIG complaint, he was sure he would have been briefed on the complaint. HT 7/27/2020, p. 112. It is also undisputed that the appellant's OIG complaints were filed within two years of her removal from the federal service.

Having found that the appellant has established her prima facie case of whistleblower reprisal, I now must determine whether the agency has shown by

---

[6] In her closing argument, the appellant cites to a proposed exhibit (IAF, Tab 34, p. 145) that was not admitted into the record. IAF, Tab 65.

clear and convincing evidence that it would have taken these same actions in the absence of her protected activity.   Under *Carr* factor one, I find overwhelming evidence in the record supported the agency's determination that the appellant engaged in the charged misconduct and that the penalty of removal was appropriate given her refusal to acknowledge and take responsibly for her actions. Under *Carr* factor two, I find the record is devoid of any credible evidence that Rosenkrance had any motive to retaliate against the appellant for her OIG complaint.   There is no evidence the complaint involved him or impacted him in any manner whatsoever.   Under *Carr* factor three, the agency presented evidence that there were no similarly situated employees who engaged in the similar misconduct as the appellant but who were not whistleblowers.   Weighing all of the evidence in the record in its entirety, I find the agency has proven by clear and convincing evidence it would have removed the appellant for her proven misconduct in the absence of her protected activity.

Nexus

In addition to proving the charge against the appellant, the agency must show that the action taken promoted the efficiency of the service.  5 U.S.C. § 7513(a).  The nexus requirement, for purposes of whether an agency has shown that its action promotes the efficiency of service, means that there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his duties satisfactorily or some other legitimate government interest.   *Fontes v. Department of Transportation,* 51 M.S.P.R. 655, at n.7 (1991).   There is a presumption of nexus where the misconduct occurred at least in part at work.  *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987); *Campbell v. Department of the Army*, 2016 MSPB 38, ¶ 24 (2016).  An agency may also establish nexus by showing that the employee's conduct affected his or her coworker's job performance, affected management's trust and confidence in the employee's job performance, or

interfered with or adversely affected the agency's mission. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶11 (2010). There is also sufficient nexus between an employee's conduct and the efficiency of the service where the sustained misconduct occurred in part in the workplace and involved an individual over whom an appellant had supervision. *Ludlum v. Department of Justice*, 87 M.S.P.R. 56, ¶¶ 2, 25, 28 (2000), aff'd, 278 F.3d 1280 (Fed. Cir. 2002).

I find that the appellant has presented nothing to overcome the presumption of nexus in this case. Here the misconduct occurred on duty, in her role as a supervisor. The rest of her misconduct involved AWOL, her absences from work and her adamant refusal to obey directives to correct her timesheets. Therefore, I find the agency has established nexus.

<u>The agency has proven the appropriateness of the removal penalty.</u>

"When the Board sustains fewer than all of the agency's charges, the Board may mitigate to the maximum reasonable penalty so long as the agency has not indicated either in its final decision or during proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges." *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). The record is devoid of any evidence that Rosenkrance believed a penalty less than removal would be appropriate if all of the charges are not proven.

In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 6 (2013); ¶ 6; *Douglas*, 5 M.S.P.R. at 306. The Board recognizes that its function is not to displace management's responsibility or to decide what penalty it would impose, but to assure that management judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Davis*, 120 M.S.P.R. 457, ¶ 6;

*Douglas*, 5 M.S.P.R. at 306. Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Davis*, 120 M.S.P.R. 457, ¶ 6; *Douglas*, 5 M.S.P.R. at 306. However, if the deciding official failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination. *Davis*, 120 M.S.P.R. 457, ¶ 6.

Rosenkrance's decision to discipline the appellant contained a detailed analysis of the factors he considered in deciding to remove the appellant. IAF, Tab 10, pp. 23-29. Applying *Hillen*, I found Rosenkrance credibly testified at length about these considerations and what led him to ultimately conclude removal was the appropriate penalty to impose based on the appellant's misconduct. HT 7/27/20, pp. 101-112. As a general matter, as noted above I found Rosenkrance to be very credible. He was forthright and direct in his testimony, answering questions without hesitation. In addition, his testimony was consistent with the information he provided in his decision letter.

In evaluating the penalty, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Edwards v. U.S. Postal Service,* 116 M.S.P.R. 173, ¶ 14 (2010); *Downey v. Department of Veterans Affairs*, 119 M.S.P.R. 302, 307–08 (2013). Rosenkrance found the appellant's sustained misconduct to be quite serious, both in her failure to follow instructions, her mistreatment of a subordinate employee, and her AWOL. He found her misconduct of particular concern given the appellant's role as a supervisor of a hotshot wildland firefighter crew. *Edwards v. U.S. Postal Service*, 116 M.S.P.R. 173, ¶ 14 (2010); *Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 23 (2008) (supervisors are held to a higher standard of conduct). Finally, Rosenkrance found the appellant's misconduct to have been repeated and she was intentional in her disregard of supervisory directives and her AWOL.

Rosenkrance also considered as aggravating the impact of the appellant's misconduct on her ability to perform supervisory duties, since in her position, the appellant was required to enforce the agency's time and attendance and leave requirements of subordinate employees. Similarly, Rosenkrance also found the appellant to have been on clear notice of the time and attendance expectations and she was on notice of the directives to correct her time and attendance reports. Rosenkrance found the penalty of removal within the range of penalties provided on the agency's table of penalties, and within the range of penalties the agency actually imposed on employees for similar misconduct.

Rosenkrance considered as mitigating factors the appellant's lack of prior disciplinary actions, her over 20 years of Federal service, and her fully successful performance level. *Singletary v. Department of Air Force*, 94 M.S.P.R. 553, 560 (2003). Nonetheless, Rosenkrance concluded the appellant was a poor candidate for rehabilitation and failed to take responsibility for her misconduct or show remorse for her actions. *See Singletary v. Department of the Air Force*, 94 M.S.P.R. 553, ¶ 15 (2003), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004).

In challenging the agency penalty determination, the appellant claimed as mitigating factors the appellant's medical conditions and the alleged "harassment and discrimination she suffered from the Appellant's management officials." IAF, Tab 29, p. 12-13 and IAF, Tab 64, pp. 21-22. I find the appellant's argument unpersuasive. The only misconduct that potentially involved her medical condition was the AWOL; there is no evidence that it affected her ability to obey supervisory directives or caused her to mistreat a subordinate employee. I also do no find credible the appellant's claims of improper harassment by her supervisors since her harassment claims involved her supervisors attempting to have her comply with leave requirements and directives to change her time and attendance coding.

I conclude Rosenkrance's selection of a removal penalty is justified as the maximum reasonable penalty for the sustained charges under the circumstances

present here.  I find the agency proved the appellant engaged in serious misconduct, which is made more serious by her role as a supervisor responsible for enforcing the type of instructions she failed to follow and for insuring the fair and equitable treatment of her subordinate employees.  The appellant's failure to follow instructions reasonably caused the agency to lose trust and confidence in her ability to perform the supervisory functions of her position.  I find particularly compelling Rosenkrance's determination that the appellant had little potential for rehabilitation given her inability to acknowledge her misconduct.

In conclusion, I find that the agency has proven four of five charges by preponderant evidence, and afforded the appellant due process protections.  The appellant also failed to prove her affirmative defenses by the relevant burdens of proof.  Finally, this adverse action was taken for such cause as will promote the efficiency of the service and the penalty of removal is within the tolerable bounds of reasonableness and was not an abuse of agency discretion.

## DECISION

The agency's action is AFFIRMED.


FOR THE BOARD:                    _____\S\_____
                                  Patricia M. Miller
                                  Administrative Judge

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date. *See* 5 C.F.R. § 1201.112(a)(4).

## NOTICE TO APPELLANT

This initial decision will become final on **April 11, 2022**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the

<u>earlier</u> date of receipt.  You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt.  You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully

follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date this decision becomes final. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after this decision becomes final</u> as explained above.  5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

# CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Mail      Pamela Messal
Post Office Box 2703
Estes Park, CO 80517

<u>Appellant Representative</u>

Electronic Mail      Ryan C. Nerney
Tully Rinckey PLLC
501 West Broadway, Suite 800
San Diego, CA 92101

Electronic Mail      Stephanie Rapp-Tully
Tully Rinckey Pllc
2001 L Street, NW, Suite 902
Washington, DC 20036

<u>Agency Representative</u>

Electronic Mail      Jerry Garcia
Department of Agriculture
4000 Masthead NE
Mailstop 311
Albuquerque, NM 87109

Electronic Mail      Rayann Brunner
Department of Agriculture
4000 Masthead St. NE, Mailstop 311
Albuquerque, NM 87109

| March 7, 2022 | /S/ |
|---|---|
| (Date) | Amanda Bell |
| | Paralegal Specialist |

**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| PAMELA MESSAL,<br>                    Appellant, | DOCKET NUMBER<br>DE-0752-20-0137-I-1 |
|          v. | |
| DEPARTMENT OF AGRICULTURE,<br>                    Agency. | DATE: March 19, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Ryan C. Nerney</u>, Esquire, Ladera Ranch, California, for the appellant.

<u>Stephanie Rapp-Tully</u>, Esquire, Washington, D.C., for the appellant.

<u>Julie Nelson</u>, Esquire, Golden, Colorado, for the agency.

<u>Rayann Brunner</u>, Esquire, Albuquerque, New Mexico, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained her removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to incorporate the proper standards for the appellant's claims of discrimination and reprisal for equal employment opportunity (EEO) activity, and to supplement the whistleblower reprisal analysis, we AFFIRM the initial decision.

The appellant most recently held the position of Supervisory Forestry Technician. Initial Appeal File (IAF), Tab 10 at 19. In this fire management position, she supervised approximately 20 individuals that made up a "Hotshot Crew." IAF, Tab 11 at 22.

In November 2019, the agency proposed the appellant's removal based upon five charges, i.e., Charges A-E. IAF, Tab 11 at 4-17. The appellant presented a written response, IAF, Tab 17 at 5-15, and an oral response, IAF, Tab 10 at 30-45. In December 2019, the deciding official sustained all the charges and the proposed penalty. *Id*. at 20-29.

The appellant timely filed the instant appeal to challenge her removal. IAF, Tab 1. The administrative judge developed the record and held a 4-day hearing. *E.g.*, IAF, Tabs 46, 51, 56, 59. She then issued an initial decision in March 2022, affirming the appellant's removal. IAF, Tab 70, Initial Decision (ID).

For Charge A, absence without leave (AWOL), the administrative judge found that the agency proved all its specifications. This included specifications 1-10, which concerned absences between March 4-15, 2019, ID at 7-13, as well as specifications 11-12, which concerned absences on October 23-24, 2019, ID at 13-19. Regarding these latter specifications, the administrative judge further found that this portion of the agency's AWOL charge merged with the entirety of Charge D, failure to follow leave procedures, which concerned the same dates. ID at 13-14.

For Charge B, conduct unbecoming a supervisor, the administrative judge found that the agency proved each of its three specifications. ID at 19-23. Broadly speaking, each alleged a particular instance of the appellant changing the working conditions of the same subordinate for the worse without a legitimate reason for doing so. IAF, Tab 11 at 5. After the agency selected the subordinate for promotion over the appellant's objection, she is alleged to have needlessly taken the subordinate's second monitor, removed his gear from a cabinet he had long used, and instructed him to move his workspace out of an office and into a hall. *Id*. at 5, 14.

For Charge C, failure to follow supervisory instructions, the administrative judge found that the agency proved specifications 1-9 and 11-13, ID at 23-32, but not specification 10, ID at 30. Of those sustained, specification 9 concerned an instruction to attend a meeting, while all others concerned separate instructions about submitting or correcting the appellant's time and attendance reports. IAF, Tab 11 at 5-7.

For Charge E, failure to follow agency policy, the administrative judge found that the agency failed to meet its burden. ID at 32-33. This charge concerned an allegation that the appellant recorded conversations with coworkers without permission to do so. IAF, Tab 11 at 7.

The administrative judge next considered but rejected the appellant's various affirmative defenses. This included claims of a due process violation or

harmful error, ID at 33-35, disability discrimination based on a failure to accommodate, ID at 35-38, disability discrimination based on disparate treatment, ID at 38-39, sex discrimination, ID at 40-41, reprisal for filing EEO complaints and Occupational Safety & Health Administration (OSHA) complaints, ID at 41-42, and reprisal for whistleblowing, ID at 42-46. Finally, the administrative judge found that the agency met its burden of proving the requisite nexus and reasonableness of its penalty. ID at 46-50.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. First, she argues that the administrative judge erred by not sanctioning the agency for disclosing certain information to witnesses before the hearing. *Id*. at 4, 12-14. Next, the appellant disputes the charges. *Id*. at 14-22. She then reasserts claims of a due process violation or harmful error, *id*. at 22-24, disability discrimination, *id*. at 24-25, sex discrimination, *id*. at 25-27, reprisal for filing EEO and OSHA complaints, *id*. at 27-29, and reprisal for whistleblowing disclosures or activities, *id*. at 29-30. Lastly, the appellant challenges the reasonableness of her removal as the penalty. *Id*. at 30-33. The agency has filed a response to the agency's petition. PFR File, Tab 4.

<u>The administrative judge did not abuse her discretion in denying the appellant's motion for sanctions or err in analyzing the testimony giving rise to the motion for sanctions.</u>

It is undisputed that the agency provided several witnesses with access to various pleadings before they appeared to testify at the hearing that was to occur over video conference. IAF, Tab 68 at 1; Hearing Transcript, Day 1 (HT1) at 8-28. This fact was revealed at the start of the hearing. *E.g*., HT1 at 8-12. The administrative judge acknowledged that this could have prejudiced the witnesses, and she indicated that she would take the matter into account as she weighed the probative value of their testimony. HT1 at 12-15.

The appellant moved to sanction the agency and exclude the testimony of these witnesses based on the agency's disclosure of such documents to the

agency's witnesses.  HT1 at 29-30; IAF, Tab 61.  The administrative judge denied the motion.  IAF, Tab 68 at 1-2.  She described conducting an exhaustive review of the record and testimony of the witnesses at issue and found no credible evidence that the witnesses were influenced by their improper access to portions of the record.  *Id.*

On review, the appellant argues that the administrative judge erred in denying her motion for sanctions.  PFR File, Tab 1 at 4, 12-13.  Alternatively, the appellant argues that the administrative judge failed to properly account for the witnesses' access to pleadings when analyzing the credibility of their testimony.  *Id.* at 13-14.  We are not persuaded.

Absent an abuse of discretion, the Board will not reverse an administrative judge's determination regarding sanctions.  *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 9.  In this instance, the administrative judge recognized the agency's actions, acknowledged that providing the pleadings to the witnesses might bias their testimony, allowed both parties to develop the issue, and considered the matter to determine the degree of prejudice.  The administrative judge acted appropriately in recognizing that the agency's actions were potentially problematic, and permitted the appellant's counsel to explore the issue through cross-examination of each witness.  HT1 at 17.  We find no abuse of discretion in her resulting denial of the appellant's motion for sanctions.  *E.g.*, HT1 at 8-9, 14.

Turning to the administrative judge's credibility findings, we also find no error.  The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has sufficiently sound reasons for doing so.  *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 13.  The appellant suggests that we should overturn the administrative judge's credibility findings because they did not explicitly discuss the fact that certain witnesses had access to the

agency's pleadings.  PFR File, Tab 1 at 13-14.  While the administrative judge may not have explicitly discussed that fact in her credibility findings, she did discuss it in her post-hearing Motion for Sanctions and Motion to Strike Testimony ruling.  As mentioned above, she found that the access by four of the witnesses to some of the pleadings and the appellant's deposition did not influence witness testimony.  IAF, Tab 68 at 1-2.  Moreover, the administrative judge made credibility determinations that were at least partially based upon witness demeanor.  *E.g.*, ID at 6, 48.  Broadly speaking, she found that the agency's witnesses provided direct testimony that was consistent with evidence of record while the appellant provided "extremely evasive" testimony that was inconsistent with the record and not believable.  *Id*.  We discern no basis to conclude otherwise.

<u>The appellant has not shown that the administrative judge erred in her analysis of the charges.</u>

On review, the appellant continues to dispute at least some of the charges and specifications that the administrative judge sustained.  PFR File, Tab 1 at 14-22.  We will address each in turn.

*Charge A, AWOL, and Charge D, Failure to Follow Leave Procedures*[2]

As further detailed in the initial decision, the period leading up to the appellant's first period of AWOL, from March 4-15, 2019, was one in which a subordinate filed a harassment claim against the appellant and the appellant complained that she had been subject to a hostile work environment, resulting in a supervisor filing a claim on the appellant's behalf.  ID at 7.  Citing the complaint *against* the appellant, the agency temporarily reassigned her as it investigated.  ID at 8.  In the period that followed, the appellant requested administrative leave,

---

[2] As previously noted, the administrative judge merged Charge D with specifications 11-12 of Charge A, and we agree with her having done so.

which the agency denied.  *Id*.  Rather than appearing and working in her temporary assignment, the appellant used other leave for many months.  *Id*.

In February 2019, the appellant submitted another request for annual leave for March 4-16, 2019, which her supervisor denied, noting that the appellant had been absent since October 2018, and indicating that there was work that needed to be done.  IAF, Tab 11 at 36.  The appellant then submitted a request for accrued or advanced sick leave for March 4-26, 2019.  *Id*. at 42.  Within the accompanying comments section, the appellant remarked as follows:  "Personal [r]easons.  Request related to workplace sexual harassment & continued harassment & relation relating to such."  *Id*.  She attached a note from a nurse practitioner that simply stated that the appellant would be absent throughout the period "due to illness."  *Id*. at 43.  The agency denied this leave request, noting that the appellant did not have any sick leave remaining, and warning that she would be AWOL if she did not return to work.  *Id*. at 46.  Nevertheless, the appellant did not return to work.  On March 11, 2019, the appellant emailed the agency, suggesting that the denial of her leave requests amounted to harassment or reprisal, stating that she had an otherwise unidentified "family emergency," and stating that she was also "ill."  *Id*. at 48.  Then, on March 17, 2019, she emailed the agency, stating that she was still "ill," and that she was "looking into FMLA."  *Id*. at 51.

For specifications 1-10 of the AWOL charge, concerning March 4-15, 2019, the administrative judge found that the agency met its burden.  ID at 7-13.  Among other things, she noted that the record contained a request for FMLA leave and associated documentation for some subsequent periods, but not the March 4-15 AWOL days.  ID at 11-13.

On review, the appellant references that FMLA documentation, dated April 29, 2019, and suggests that it should cover the March 4-15 AWOL period.  PFR File, Tab 1 at 16-17 (referencing IAF, Tab 11 at 113-16).  The appellant is effectively arguing that the agency should have retroactively granted her FMLA

leave even though she never requested FMLA leave for the relevant period. We disagree and find that the agency was under no such obligation. The Office of Personnel Management's implementing regulations provide that an employee may not retroactively invoke FMLA leave, absent an exception pertaining to medical inability that does not apply here. 5 C.F.R. § 630.1203(b).

Turning to specifications 11-12 of the AWOL charge, which concerned October 23-24, 2019, the administrative judge also found that the agency met its burden. ID at 13-19. As further detailed in the initial decision, these were dates the appellant failed to appear for work after her supervisor had denied her request to telework so that she could work on her EEO matters from home and had scheduled an in-person meeting with the appellant. ID at 15-18. The appellant submitted a doctor's note at some point after the fact, indicating that she should be excused from work. IAF, Tab 37 at 12-13.

On review, the appellant argues that she was entitled to FMLA leave or leave without pay (LWOP) for the October 23-24 dates in question. PFR File, Tab 1 at 21-22. The administrative judge found that the appellant did not request leave at the time, ID at 17, and the appellant has not directed us to any evidence to the contrary. The appellant suggests that the agency should have nevertheless assumed that her absence on October 23-24 was related to approved FMLA leave from months earlier. *Id*. at 21. Alternatively, the appellant argues that the agency was required to grant her LWOP. *Id*. at 21-22. We disagree.

Leading up to the dates in question, the appellant made no mention of a medical need for leave. She instead asked to work on her EEO matters from home, and then accused her supervisor of abuse when the supervisor indicated that the appellant needed to come to the office. *E.g*., IAF, Tab 12 at 204-06. On the morning of October 23, the appellant sent her supervisor three emails in which she again requested telework to pursue her EEO matters, and again accused her supervisor of harassment when the supervisor once again indicated that she expected the appellant in the office. *Id*. at 213, 215, 218, 221, 223. In an

afternoon email, her fourth of the day to her supervisor, the appellant stated that she was ill and going to the doctor due to the supervisor's abuse. *Id*. at 223. The appellant separately sent an email to other officials indicating that she was at her local police station to file a report of threats or abuse by her supervisor. *Id*. at 221, 229. She did not request leave in any of these emails, at which point she was already AWOL. We found nothing showing that the appellant indicated that she was entitled to FMLA leave later that day or the next when she was also AWOL. In fact, it is not even apparent that the appellant had FMLA leave remaining by the time of these absences. *Compare* IAF, Tab 11 at 119 (approving the appellant's request for FMLA leave for the period between March 18 and June 16, 2019), *with* 5 C.F.R. § 630.1203 (describing an employee's entitlement to 12 weeks of FMLA leave during any 12-month period). Accordingly, we do not find that the agency was obligated to retroactively place her in an FMLA leave status, without any associated request by the appellant.

Regarding the appellant's alternative argument, about LWOP, the Board will consider whether an agency's denial of LWOP, a category of leave which is discretionary, was reasonable in some circumstances involving medical excuses. *Sambrano v. Department of Defense*, 116 M.S.P.R. 449, ¶ 4 (2011). Here, though, the appellant did not request LWOP for October 23-24, 2019. Even if she had, we would find the agency's denial of LWOP reasonable, given the appellant's many months of prior absences and the well-documented circumstances surrounding her October 23-24 absence.

### *Charge B, conduct unbecoming a supervisor*

To recall, each specification of the conduct unbecoming a supervisor charge alleged a particular instance of the appellant changing the working conditions of the same subordinate for the worse, without a legitimate reason for doing so. IAF, Tab 11 at 5. The agency alleged that she removed a second monitor the subordinate had been using, which was the private property of another employee, only to place it in her own office unused, she instructed the

subordinate to remove his gear from a cabinet he had personally recovered from a dumpster and used for years, and she directed the subordinate to vacate a shared office and move his workspace into a hallway.  *Id.*

On review, the appellant argues that these allegations were false or that her conduct was not unbecoming.  PFR File, Tab 1 at 17-19.  To do so, she presents several brief arguments.  For example, the appellant reasserts her own testimony and she challenges written statements by other witnesses because they signed their statements without also initialing each page.  *Id.* at 18-19.  The appellant also speculates that one witness may have been motivated to provide false allegations so that he could take over the appellant's position after her removal.  *Id.* at 19.  Additionally, the appellant describes the acts as minor discretionary decision making.  *Id.*

We are not persuaded.  Although the appellant testified that she removed the subordinate's monitor and access to the cabinet for the sake of fairness to other employees, the administrative judge did not find that explanation credible, especially when compared to the appellant's prior explanations about the matters and other witness testimony or statements about the surrounding circumstances.  ID at 19-21.  For similar reasons, the administrative judge did not find the appellant's testimony about moving the subordinate's work location for the purpose of better communication among employees to be credible.  ID at 22-23.  The appellant's brief arguments, such as her reassertion of her own testimony and speculations about the motivations of others, do not provide a basis for disturbing the administrative judge's findings, which are grounded in credibility determinations.  *See Karnes*, 2023 MSPB 12, ¶ 13.

*Charge C, failure to follow supervisory instructions*

We next turn to the failure to follow supervisory instructions charge, of which the administrative judge sustained specifications 1-9 and 11-13. ID at 23-32.  Broadly speaking, specifications 1-9 and 12-13 concerned different dates and instructions that the appellant failed to follow pertaining to her time

and attendance reports.  IAF, Tab 11 at 5-7.  Specification 11 concerned the appellant failing to appear after being instructed to attend a meeting.  *Id*. at 6.

On review, the appellant challenges specifications 1-6, which are specific to instructions between March 27 and June 10, 2019, asserting that she was entitled to FMLA leave throughout that period so any instructions relating to her submission of time and attendance reports were improper.  PFR File, Tab 1 at 20.  We disagree.  Throughout this time, the appellant was active in terms of her time and attendance reports, so we discern no basis for concluding that it was improper for the agency to give her instructions about the same.

For example, in specification 1, the agency instructed the appellant to update her time and attendance report to reflect her new first-level supervisor.  IAF, Tab 11 at 53.  Within hours, the appellant defied that instruction, choosing her fourth-level supervisor as the individual listed as her supervisor for time and attendance reporting.  *Id*. at 55.  It is therefore apparent that the appellant was not incapacitated or otherwise unable to receive and respond to the instruction, despite the appellant's insinuation to the contrary.

In specification 2, the appellant and her supervisor exchanged numerous emails about her time and attendance report covering the March 2019 AWOL period.  IAF, Tab 11 at 65-70.  Her supervisor explained that the appellant's reporting of LWOP for the days at issue was not approved and needed to be changed to reflect her AWOL status, whereas the appellant disagreed.  *Id*.  Again, there is nothing in the record suggesting that the appellant was incapacitated and unable to follow the instructions, or that it was otherwise improper for the agency to instruct the appellant to correct her erroneous time and attendance reporting.

The appellant also challenges specifications 12-13, stating that she was not AWOL, so the instructions to amend her timesheet to include AWOL hours were not proper.  PFR File, Tab 1 at 21.  But as the administrative judge correctly

determined that the appellant was AWOL for those hours, we find the appellant's reliance on a contrary conclusion to be unavailing.[3]

<u>The appellant did not prove her affirmative defenses.</u>

As previously stated, the appellant's petition for review reasserts claims of a due process violation or harmful error, PFR File, Tab 1 at 22-24, disability discrimination, *id*. at 24-25, sex discrimination, *id*. at 25-27, reprisal for filing EEO and OSHA complaints, *id*. at 27-29, and reprisal for whistleblowing, *id*. at 29-30.  We will address each in turn.

*Due process or harmful error*

On review, the crux of the appellant's due process and harmful error argument is that the response period for her proposed removal was too short. PFR File, Tab 1 at 22-24.  The agency proposed her removal on November 13, 2019.  IAF, Tab 11 at 4-8.  The proposal indicated that the appellant could submit a response within 7 calendars days, while also scheduling a meeting November 21, 2019, for purposes of any oral response.  *Id*. at 8.  Although the appellant sought an extension of at least a week, the agency denied that request.  IAF, Tab 33 at 4-8.[4]

To the extent that the appellant is suggesting that the agency committed a harmful error, she has not carried her burden.  A harmful error is an error by the agency in the application of its procedures that is likely to have caused the agency to reach a different conclusion from the one it would have reached in the absence or cure of the error.  *Semenov v. Department of Veterans Affairs*, 2023

---

[3] The appellant has not presented any argument about specifications 7-9 and 11, and we discern no error in the administrative judge's conclusion that the agency met its burden. PFR File, Tab 1 at 20-21. The appellant does present arguments on review about specification 10, PFR File, Tab 1 at 20-21, but that is the specification the administrative judge did not sustain, ID at 30, so we need not further consider the matter.

[4] The record suggests that the agency denied the request for extension because of the deciding official's limited availability and the agency's belief that an unidentified Executive Order required that it issue a decision within 14 days of the proposed removal.  IAF, Tab 33 at 5.

MSPB 16, ¶ 23.  Here, the appellant has not identified any agency procedure that it erred in applying or that any such error was harmful.

To the extent that the appellant is suggesting that the agency committed a due process violation, we are not persuaded.  The essential requirements of constitutional due process for a tenured public employee are notice of the charges against her, an explanation of the evidence, and an opportunity for her to present her account of events.  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).  The Board has further stated that due process requires, at a minimum, that an employee being deprived of her property interest be given the opportunity to be heard at a meaningful time and in a meaningful manner.  *Palafox v. Department of the Navy*, 124 M.S.P.R. 54, ¶ 9 (2016).[5]

Here, the agency provided 7 days for the appellant to respond to her proposed removal, and she responded within that period.  IAF, Tab 10 at 30-45, Tab 17 at 5-15.  The appellant nevertheless suggests that she was unable to provide a *meaningful* response in that amount of time because the documentation attached to her proposed removal was extensive and she needed to gather documentation of her own.  PFR File, Tab 1 at 23.  However, the appellant has not provided any further explanation.  She has merely speculated that additional time would have led to a better-prepared response.  We find that the appellant's limited argument does not establish that the agency denied her due process.  *See, e.g., Henderson v. Department of Veterans Affairs*, 123 M.S.P.R. 536, ¶¶ 1-13 (2016) (finding that an appellant who was given 7 days to respond to their proposed adverse action was not denied due process), *aff'd* 878 F.3d 1044 (Fed. Cir. 2017); *Ronso v. Department of the Navy*, 122 M.S.P.R. 391, ¶ 13 (2015) (same); *Ray v. Department of the Army*, 97 M.S.P.R. 101, ¶ 22 (2004) (finding that an appellant may have preferred a longer response period, the agency's

---

[5] Though not invoked by the appellant, there is a statutory requirement that an individual such as the appellant be given "a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of" her response to the proposed removal.  5 U.S.C. § 7513(b)(2).

denial of an extension did not violate his due process rights), *aff'd*, 176 F. App'x 110 (Fed. Cir. 2006).

*Disability discrimination*

Turning to her claim of disability discrimination, the appellant also presents limited argument. She asserts that agency officials "failed to fully engage in the requisite interactive process" and that they "generally ignored her medical conditions and requests for leave by continuously changing her [leave] to AWOL." PFR File, Tab 1 at 24-25. The appellant further asserts that the administrative judge considered the motivations of the deciding official, without considering whether any others who played a role in her removal may have been motivated by her disability. *Id*. at 25.

Following the issuance of the initial decision, the Board clarified that an appellant may prove disability discrimination by demonstrating that it was a motivating factor in the contested personnel action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 22, 40, 42. The administrative judge found that the appellant did not present any credible evidence that her disability motivated the agency's removal action. ID at 38-39. In her petition, the appellant is correct that the administrative judge's discussion focused on the deciding official, without mentioning any other agency official. PFR File, Tab 1 at 25; ID at 39. But the appellant has not elaborated by presenting argument or evidence about the motivations of others, despite it being her burden to prove this claim. PFR File, Tab 1 at 25. Accordingly, we find no reason to find that the appellant proved that her disability was a motivating factor in the removal action before us.[6]

The administrative judge found that the appellant did not prove her failure to accommodate claim because, inter alia, the appellant declined the agency's

---

[6] Because we find that the appellant failed to prove that disability discrimination was a motivating factor in the agency's action, we need not reach the question of whether the appellant proved that it was a but-for cause of the agency's action. *Pridgen*, 2022 MSPB 31.

offer to engage in the reasonable accommodation process. ID at 37-38. The appellant's petition for review does not identify any evidence to the contrary, nor does it present substantive argument to the contrary. Her bare assertion that the agency failed to fully engage in the interactive process is therefore unavailing. *See* 5 C.F.R. § 1201.115(a) (providing that a petition for review must identify specific evidence in the record demonstrating any alleged erroneous findings of material fact and explain why the challenged factual determinations are incorrect).

### Sex discrimination

Like her disability discrimination claim, the motivating factor standard applies to the appellant's claim of sex discrimination, so we modify the initial decision to incorporate this standard. *Pridgen*, 2022 MSPB 31, ¶¶ 20-22. The administrative judge found that the appellant submitted a bare allegation but no credible evidence that the agency's actions were motivated by sex. ID at 40-41. The appellant reasserts her sex discrimination claim on review, but still presents little more than speculation that sex was a motivating factor in her removal. PFR File, Tab 1 at 25-26. Without more, the appellant has not shown that the administrative judge erred in denying this affirmative defense.[7] *See* 5 C.F.R. § 1201.115(a).

### Reprisal for EEO complaints

Claims of retaliation for opposing sex discrimination in violation of Title VII are analyzed under the same framework as a sex discrimination claim. *Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 32; *Pridgen*, 2022 MSPB 31, ¶ 30. However, a but-for causation standard is applicable to retaliation claims based on activity protected under the Rehabilitation Act. .The but-for standard is

---

[7] The only portion of the record the appellant cites is her written declaration from below. PFR File, Tab 1 at 26 (referencing IAF, Tab 14 at 26-31). By itself, that declaration is not persuasive, especially when accounting for the administrative judge's conclusion that the appellant regularly sought to manipulate information to create an inaccurate narrative and was not credible. ID at 6.

more stringent than the motivating factor standard. *Desjardin*, 2023 MSPB 6, ¶ 31; *Pridgen*, 2022 MSPB 31, ¶ 47.

On review, the appellant correctly notes that the administrative judge's analysis for this claim also focused on the deciding official, without explicitly discussing whether others may have been motivated to retaliate for her EEO activity. PFR File, Tab 1 at 27; ID at 42. But she once again fails to provide any substantive or persuasive argument to support her claim. Aside from summarily asserting that some relevant officials were implicated by some of her EEO activities, the appellant's petition includes no substantive argument or reference to evidence that would prove by preponderant evidence that her EEO activity was even a motivating factor in her removal.[8] *Id*. at 28-29. We therefore find that the appellant has not met her burden.

*Reprisal for OSHA complaints*

To the extent that the appellant alleged that her removal was reprisal for filing OSHA complaints, the administrative judge considered the matter under both 5 U.S.C. § 2302(b)(8), a provision prohibiting whistleblower reprisal, and (b)(9)(A)(ii), a provision prohibiting reprisal for the filing of a complaint that does not regard remedying whistleblower reprisal, but she found the claim unavailing. ID at 41-42, 45. The administrative judge explained that while it was undisputed that the appellant filed OSHA complaints, the appellant failed to prove that her removal could have been retaliation for OSHA complaints, that there was a genuine nexus between her removal and OSHA complaints, or that her OSHA complaints contained protected whistleblowing disclosures. ID at 42, 45.

For an appellant to prevail on an affirmative defense of retaliation for activity protected under 5 U.S.C. § 2302(b)(9)(A)(ii), if she does not allege reprisal for EEO activity protected under Title VII, she must show that: (1) she

---

[8] The appellant once again cited her written declaration from below, but no other evidence of record. PFR File, Tab 1 at 28-29 (referencing IAF, Tab 14 at 26-31). For the reasons already discussed in this decision and the initial decision, that declaration is not particularly persuasive. *Supra*, n.7.

engaged in protected activity; (2) the accused official knew of the activity; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action. *Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016). On the other hand, under 5 U.S.C. § 2302(b)(8), it is a prohibited personnel practice to take a personnel action because of any disclosure of information by an employee that the employee reasonably believes evidences any violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 5.

In her petition for review, the appellant has not presented any substantive arguments about her OSHA complaints or the administrative judge's findings about the same. She does not, for example, identify any associated evidence of record, describe the nature of her OSHA complaints, or explain why she believes they played a role in her removal action.

Based upon our own review of the record, we located some indications that the appellant filed an OSHA complaint about rodents in the office where she worked.[9] The complaint alleged that the agency had denied her resulting request to telework full-time, despite rodent feces throughout the office causing her months of flu-like symptoms and multiple trips to an urgent or emergency care center. IAF, Tab 34 at 144-50. The agency provided a thorough response to OSHA officials that, inter alia, described a physical inspection, the absence of any physical sign of rodents in the building, and the absence of any other individuals reporting that they had seen rodents or signs of their presence. *Id*. at 142-43. Based upon this limited evidence and the absence of further

---

[9] The administrative judge seemed to indicate that she did not consider the OSHA complaint because it was not admitted into the record, and the record was therefore devoid of any OSHA complaint. ID at 45 n.6 (referencing IAF, Tab 34 at 145, Tab 65). Because we were able to locate this information in the record and are unable to find any explanation for why the administrative judge did not admit this evidence into the record, we are considering the evidence.

argument from the appellant, we agree with the administrative judge's conclusion that the appellant failed to meet her burden for her claim of reprisal relating to this or any other OSHA complaint under 5 U.S.C. § 2302(b)(8) or 5 U.S.C. § (b)(9)(A)(ii).  *See* 5 C.F.R. § 1201.115(a).

*Reprisal for whistleblowing activities*

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), to prevail on a prohibited personnel practice affirmative defense in a chapter 75 appeal that independently could form the basis of an individual right of action appeal, once the agency proves its adverse action case by a preponderance of the evidence, the appellant must demonstrate by preponderant evidence that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the disclosure or activity was a contributing factor in the adverse action. *Fisher*, 2023 MSPB 11, ¶ 5. If the appellant meets this burden, then the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure or activity.  *Id*.  In determining whether the agency has met this burden, the Board will consider all the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

The administrative judge applied these standards and found that the appellant did not prove that her OSHA complaints contained the type of disclosure protected by section 2302(b)(8), and we agree.   ID at 42-45. Conversely, the administrative judge found that the appellant's OIG complaint was protected under section 2302(b)(9)(C), regardless of its contents.

*Id*.; *see Fisher*, 2023 MSPB 11, ¶ 8.  She further found that the appellant satisfied her burden regarding the contributing factor element because the deciding official testified that he did not remember the appellant's OIG complaint, but "probably was briefed" on it at some point.  ID at 45-46; Hearing Transcript, Day 3 (HT3) at 112 (testimony of deciding official).

Because the administrative judge found that the appellant presented this prima facie case of reprisal under section 2302(b)(9)(C), she shifted the burden of persuasion to the agency.  The administrative judge found that there was overwhelming evidence in support of the agency's removal action, there was no evidence that the deciding official had any motive to retaliate, and there was no evidence of similarly situated employees who were not whistleblowers.  ID at 46.

On review, the appellant correctly notes that the administrative judge's analysis discusses the potential motive of the deciding official but no other individual.  PFR File, Tab 1 at 29-30.  However, the appellant presents no other substantive argument regarding her whistleblower reprisal claim.

Nonetheless, we modify the initial decision to supplement the administrative judge's *Carr* factor analysis while reaching the same conclusion—that the appellant's whistleblower reprisal claim fails.  Like the administrative judge, we find that the evidence in support of the agency's removal action is strong.  There is abundant documentary evidence showing how the appellant was absent from work for many months, culminating with her AWOL on several dates spanning many more months, despite warnings. ID at 7-19; *supra*, ¶¶ 17-24.  There is also ample evidence, including numerous emails and other documentation, showing how the appellant repeatedly defied simple and unambiguous instructions, mostly as she sought to avoid work and take more leave than allowed.  ID at 23-32; *supra*, ¶¶ 28-32.  Lastly, there is solid evidence of the appellant engaging in unbecoming conduct towards her subordinate, including some admissions by the appellant.  ID at 19-23; *supra*, ¶¶ 25-27.  The limited argument or evidence the appellant presented to

defend against these charges was not persuasive. To recall, the administrative judge did not find the appellant to be credible. ID at 6. Among other things, she explained how the appellant had an ever-changing story and regularly tried to manipulate information to create an inaccurate narrative. *Id.*

We recognize that the administrative judge did not sustain one of the agency's charges, about failing to follow policy by recording a meeting without permission, and one specification of the failure to follow supervisory instructions. However, these were not particularly consequential in the grand scheme of the removal action, which spanned many acts over more than a year. IAF, Tab 11 at 4-7.

Turning to the motive to retaliate, we note that although the appellant has repeatedly referenced OIG complaints, she provided limited details about the same. Within her petition for review, the appellant's only mentions of OIG complaints are cursory ones in which she recounts the wide variety of complaints she has lodged against the agency. PFR File, Tab 1 at 27-28. While doing so, the appellant references just one piece of evidence—a declaration by the appellant, in which she makes no mention of an OIG complaint. PFR File, Tab 1 at 28 (referencing IAF, Tab 14 at 26-31). Elsewhere, in the appellant's "affirmative defense brief," she described her OIG complaint as occurring in February 2018. *Id.* at 13. But she did not describe the contents or subject of the complaint, nor did she point to evidence of the same. *Id.* Separately, the same pleading includes a November 2019 email from the appellant to OIG, in which she complains of years-long harassment that had culminated with her impending removal and the appellant fearing for her life. *Id.* at 113-14.

Within her testimony, the appellant described what seems to have been other OIG complaints about agency officials engaging in sexual harassment. HT3 at 151-52, 155-58 (testimony of the appellant). There is also testimony from another witness suggesting that the appellant filed a different OIG complaint at some point, which alleged that one of her subordinates sexually harassed her—the

subordinate who was subject to the appellant's unbecoming conduct.  HT1 at 168 (testimony of appellant's subordinate).  Finally, the appellant's closing brief once again mentions that she filed an OIG complaint, but this time the complaint is merely identified as occurring in October 2019.  IAF, Tab 64 at 18.  This closing brief does not elaborate on the alleged complaint, and it only points to a portion of the record pertaining to her OSHA complaint about rodents.  *Id*. (referencing IAF, Tab 34 at 145).

This is just some of the history of complaints described in the record, most of which we were unable to corroborate with further documentation.  The lone exception we came across is a February 2019 OIG report, in which OIG concluded that it could not substantiate the appellant's claim of harassment by a former supervisor.[10]  IAF, Tab 36 at 5-11.  Specific to the appellant's theory of reprisal, we also came across testimony in which appellant's counsel asked why she believed the agency would retaliate for "an OIG complaint," and the appellant simply responded that "basically, [it] just turned the heat up on the harassment."  HT3 at 251-52 (testimony of the appellant).

We acknowledge that relevant officials may have had some motive to retaliate for any OIG complaint of which they were aware.[11]  Broadly, the appellant was routinely filing complaints about the agency both internally and with external parties such as the OIG and local police.  This was surely frustrating to at least some agency officials.  However, the lone OIG report we

---

[10] Following her initial complaints about this supervisor, in March 2018, the appellant was reassigned to a different supervisor in May 2018.  ID at 7; IAF, Tab 38 at 10.  For context, the appellant's conduct unbecoming a supervisor occurred prior to this change in her chain of command, but all other conduct underlying her removal occurred nearly a year or more after.  IAF, Tab 11 at 4-7.  The former supervisor was not the proposing or deciding official, and he did not testify at the hearing below.

[11] The Federal Circuit has cautioned the Board against taking an "unduly dismissive and restrictive view" of retaliatory motive, holding that, "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated . . . , and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees."  *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012)

found in the record indicated that the appellant's allegations could not be substantiated, and those allegations were directed at an individual who played little if any role in the appellant's removal.  IAF, Tab 36 at 5-11.

Weighing the *Carr* factors together, we find that the agency would have taken the same removal action in the absence of the appellant's protected whistleblowing activity.[12]  Although agency officials may have harbored some motive to retaliate for the appellant's protected whistleblowing activity, this is far outweighed by the strength of the evidence in support of the agency's removal action.  The appellant's whistleblower reprisal claim is, therefore, unsuccessful.

<u>Removal was a reasonable penalty.</u>

When, as here, the Board does not sustain all the charges, it will carefully consider whether the sustained charges merit the penalty imposed by the agency. *Moncada v. Executive Office of the President*, 2022 MSPB 25, ¶ 39.  The Board may mitigate the penalty imposed by the agency to the maximum penalty that is reasonable in light of the sustained charges as long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed for fewer charges.  *Id*.

The administrative judge applied this standard and found that removal was reasonable.  ID at 47-50.  The appellant disagrees.  PFR File, Tab 1 at 30-33. In particular, she characterizes hers as an unblemished and highly successful career of 23 years.  *Id*. at 32.  The deciding official and administrative judge accounted for the same, recognizing that this was a mitigating factor, but concluded that the appellant failed to take responsibility for her misconduct or show remorse for her actions and was a poor candidate for rehabilitation. ID at 49; IAF, Tab 10 at 26-27.

---

[12] As already mentioned, the administrative judge found that there was no evidence pertaining to the third *Carr* factor, about similarly situated non-whistleblowers, which effectively removes the factor from the analysis.  *See Whitmore*, 680 F.3d at 1374.

The appellant separately argues that the deciding official and administrative judge erred by characterizing her lack of remorse as an aggravating factor, because this essentially penalized her for mounting a defense. PFR File, Tab 1 at 33 (citing *Raco v. Social Security Administration*, 117 M.S.P.R. 1 (2011)).  In fact, what the deciding official and administrative judge found was that the appellant lacked rehabilitation potential because she failed to take responsibility for her actions or show remorse. ID at 49-50; IAF, Tab 10 at 29.  We agree with that assessment.  *See, e.g.*, IAF, Tab 10 at 30-45, Tab 17 at 5-10.  The appellant has not pointed us to anything reflecting otherwise. This contrasts with the case cited by the appellant, where an employee confessed to her inappropriate conduct and apologized for it before mounting a defense to her proposed removal by way of explaining her behavior and identifying mitigating factors. *Racco*, 117 M.S.P.R. 1, ¶ 16.

In her petition for review, the appellant has not presented any other substantive arguments about the reasonableness of her removal, and we find no basis for reaching a conclusion different than that of the administrative judge. Among other things, some of the sustained charges are quite serious.  *See Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 20 (recognizing that the nature and seriousness of the offense is the most important factor in assessing the penalty). This includes her conduct unbecoming, which the proposing and deciding officials described as negative and unequal treatment of a subordinate she disfavored for a promotion after he was nevertheless selected for that promotion. *E.g.*, IAF, Tab 10 at 25, Tab 11 at 14.  Plus, the appellant holds a supervisory position, and she repeated some of the conduct underlying this action in the face of warnings that it would lead to discipline.  *Id*. at 25-26; *see, e.g., Thomas*, 2022 MSPB 35, ¶ 21 (recognizing that supervisors may be held to a higher standard of conduct).  Weighing these and other relevant *Douglas* factors, we agree with the administrative judge's conclusion that removal is a reasonable penalty for the sustained charges and specifications.  *See Douglas v. Veterans*

*Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors that might be relevant when assessing the reasonableness of the penalty).

## NOTICE OF APPEAL RIGHTS[13]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.    5 U.S.C. § 7703(b)(2);  *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14]   The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[14]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

_Gina K. Grippando_

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Service            Pamela Messal
                             Served on email address registered with MSPB

<u>Appellant Representative</u>

Electronic Service            Ryan Nerney
                             Served on email address registered with MSPB

<u>Agency Representative</u>

U.S. Mail                    Rayann Brunner
                             4000 Masthead St. NE, Mailstop 311
                             Albuquerque, New Mexico 87109

<u>Agency Representative</u>

Electronic Service            Julie Nelson
                             Served on email address registered with MSPB

<u>Private Attorney</u>

Electronic Service            Stephanie Rapp-Tully
                             Served on email address registered with MSPB

| 03/19/2024 | | Tawanda Williams |
|---|---|---|
| (Date) | | Tawanda Williams |
| | | Paralegal Specialist |

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### DENVER FIELD OFFICE

| | |
|---|---|
| PAMELA MESSAL, | DOCKET NUMBER |
| Appellant, | DE-0752-20-0137-C-1 |
| v. | |
| DEPARTMENT OF AGRICULTURE, | DATE: June 2, 2022 |
| Agency. | |

Ryan C. Nerney, Esquire, San Diego, California, for the appellant.

Stephanie Rapp-Tully, Esquire, Washington, D.C., for the appellant.

Julie Nelson, Esquire, Golden, Colorado, for the agency.

Rayann Brunner, Esquire Albuquerque, New Mexico, for the agency.

### BEFORE
Patricia M. Miller
Administrative Judge

## INITIAL DECISION

On April 11, 2022, the appellant filed the instant petition for enforcement of a purported settlement of this appeal. For the reasons set forth below, the appellant's petition for enforcement is DISMISSED, for lack of jurisdiction.

### ANALYSIS AND FINDINGS

On March 7, 2022, an initial decision was issued in the matter of *Messal v. Department of Agriculture* (DE-0752-20-0137-I-1) sustaining the agency's adverse action involving the appellant. Initial Appeal File (IAF) Tab 70. The decision provided that the initial decision would become final on April 11, 2022

"unless a petition for review is filed by that date." *Id.*, p. 51.    Prior to the decision becoming final, on April 11, 2022, the appellant filed a petition for review.  Petition for Review File (PFRF), Tab 1.  The Board acknowledged its receipt of the appellant's petition on April 12, 2022.  PFRF, Tab 2.

Under the Board's regulations, "[a]ny party may petition the Board for enforcement of a final decision or order issued under the Board's appellate jurisdiction, or for enforcement of the terms of a settlement agreement that has been entered into the record for the purpose of enforcement in an order or decision under the Board's appellate jurisdiction."  5 C.F.R. § 1201.182.  Also under the Board's regulations, a petition for review prevents an initial decision from becoming a final Board order.  5 C.F.R § 1201.113.  Inasmuch as there is no final Board order in this matter, any petition for enforcement is prematurely filed, and the Board lacks jurisdiction at this time to entertain any petition for enforcement.

In addition, the Board only enforces settlement agreements that have been entered into the record for enforcement purposes.  Before dismissing an appeal based on a settlement agreement, an administrative judge must document for the record that the parties reached a settlement agreement, understood its terms, and agreed on whether it was to be enforceable by the Board. *Mahoney v. U.S. Postal Service*, 37 M.S.P.R. 146, 149(1988). I find that to date no settlement agreement was reviewed and entered into the Board's record by a Board administrative judge during the processing of this appeal; therefore, this threshold jurisdictional requirement also has not been met.  Accordingly, this petition must be dismissed for lack of jurisdiction.

## DECISION

The appellant's petition for enforcement is DISMISSED for lack of jurisdiction.


FOR THE BOARD:                    _____\S_____
                                  Patricia M. Miller
                                  Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on __July 7, 2022__, unless a petition for review is filed by that date.  This is an important date because it is usually the last day on which you can file a petition for review with the Board.  However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision.  If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first.  You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review.  Your petition or cross petition for review must

state your objections to the initial decision, supported by references to applicable laws, regulations, and the record.  You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website    (https://e-appeal.mspb.gov).

## **Criteria for Granting a Petition or Cross Petition for Review**

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date

you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a

statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date this decision becomes final.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after this decision becomes final</u> as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Mail          Pamela Messal
Post Office Box 2703
Estes Park, CO 80517

<u>Appellant Representative</u>

Electronic Mail          Ryan C. Nerney
Tully Rinckey PLLC
501 West Broadway, Suite 800
San Diego, CA 92101

Electronic Mail          Stephanie Rapp-Tully
Tully Rinckey Pllc
2001 L Street, NW, Suite 902
Washington, DC 20036

<u>Agency Representative</u>

Electronic Mail          Julie Nelson
Department of Agriculture
1617 Cole Blvd., Building 17
Golden, CO 80401

Electronic Mail          Rayann Brunner
Department of Agriculture
4000 Masthead St. NE, Mailstop 311
Albuquerque, NM 87109

| June 2, 2022 | /S/ |
|:---:|:---:|
| (Date) | Amanda Bell |
| | Paralegal Specialist |

**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

PAMELA MESSAL,
              Appellant,

     v.

DEPARTMENT OF AGRICULTURE,
              Agency.

DOCKET NUMBER
DE-0752-20-0137-C-1

DATE: March 20, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Ryan C. Nerney</u>, Ladera Ranch, California, *for the appellant.*

<u>Stephanie Rapp-Tully</u>, Washington, D.C., *for the appellant.*

<u>Julie Nelson</u>, Golden, Colorado, *for the agency.*

<u>Rayann Brunner</u>, Albuquerque, New Mexico, *for the agency.*

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

    The appellant has filed a petition for review of the initial decision, which dismissed her petition for enforcement for lack of jurisdiction. On petition for review, the appellant argues that the parties reached an oral settlement agreement in the underlying removal appeal, and that the Board should enforce that

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

agreement.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

### NOTICE OF APPEAL RIGHTS[2]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[2] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[3]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[3]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Service          Pamela Messal
                            Served on email address registered with MSPB

Appellant Representative

Electronic Service          Ryan Nerney
                            Served on email address registered with MSPB

Agency Representative

U.S. Mail                   Rayann Brunner
                            4000 Masthead St. NE, Mailstop 311
                            Albuquerque, New Mexico 87109

Agency Representative

Electronic Service          Julie Nelson
                            Served on email address registered with MSPB

Private Attorney

Electronic Service          Stephanie Rapp-Tully
                            Served on email address registered with MSPB

03/20/2024
(Date)

Tawanda Williams

Tawanda Williams
Paralegal Specialist